## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**Human Rights Defense Center,**

        Plaintiff,

vs.

**MICHELLE LUJAN GRISHAM**, individually and in her capacity as Governor of the State of New Mexico; **ALISHA TAFOYA LUCERO**, individually and in her capacity as Cabinet Secretary of the New Mexico Corrections Department; **MELANIE MARTINEZ**, individually and in her capacity as Deputy Secretary of the New Mexico Correction Department; **GARY MACIEL**, individually and in his capacity as Deputy Secretary of the New Mexico Correction Department; **BRIAN R. EVANS**, individually and in his capacity as Chief Executive Officer of The GEO Group, Inc.; **WAYNE H. CALABRESE**, individually and in his capacity as President and Chief Operating Officer of The GEO Group, Inc.; **THE GEO GROUP, INC. d/b/a LEA COUNTY CORRECTIONAL FACILITY**, a corporation; **JOHN AND JANE DOES 1-20**, individually and in their official capacities; and **ENTITIES 1-10**,

        Defendants.

**No.**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES UNDER THE FEDERAL CIVIL RIGHTS ACT, 42 U.S.C. § 1983

### INTRODUCTION

1.    Plaintiff Human Rights Defense Center ("HRDC" or "Plaintiff") brings this action to enjoin Defendants from censoring publications and correspondence that it mails

to people incarcerated with the New Mexico Corrections Department (the "NMCD" or the "Department").  Defendants have adopted and implemented mail policies, practices, and customs that unconstitutionally prohibit delivery of publications and correspondence mailed by Plaintiff to persons incarcerated at the Department, and that deny due process of law to senders, like Plaintiff, whose mail is censored, by failing to provide adequate notice and an opportunity to challenge each instance of censorship.  Defendants' actions violate its rights under the First and Fourteenth Amendments to the United States Constitution.  Plaintiff seeks injunctive and declaratory relief, and damages in an amount to be proven at trial pursuant to 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1331 (federal question), as this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343 (civil rights), as this action seeks redress for civil rights violations under 42 U.S.C. § 1983.

3.      Venue is proper under 28 U.S.C. § 1391(b).  At least one Defendant resides within this judicial district and the events giving rise to the claims asserted herein all occurred within this judicial district.

4.      Plaintiff's claims for relief are brought pursuant to 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the First and Fourteenth Amendments to the United States Constitution and laws of the United States.

5.      This Court has jurisdiction over claims seeking declaratory and injunctive

relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, as well as nominal and compensatory damages, against all Defendants, and punitive damages against the individual defendants in their personal capacities.

6.      Plaintiff's claim for attorneys' fees and costs for its federal claims is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

7.      Plaintiff is informed, believes, and based thereon alleges that the individual Defendants as described herein acted with reckless disregard for Plaintiff's rights and/or with the intent to injure, vex, annoy and harass Plaintiff, and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights with the intention of causing Plaintiff injury and depriving it of its constitutional rights.  As a result of the foregoing, Plaintiff seeks compensatory and punitive damages against the individual Defendants.

**PARTIES**

8.      Plaintiff HUMAN RIGHTS DEFENSE CENTER is a not-for-profit charitable organization recognized under § 501(c)(3) of the Internal Revenue Code, incorporated in the state of Washington and with principal offices in Boynton Beach, Florida.  For over thirty-four years, HRDC has focused its mission on public education, advocacy and outreach to incarcerated persons and the public about the economic and social costs of prisons to society, and to help incarcerated persons educate themselves about their constitutional and human rights and to learn about accessing education while

incarcerated.  HRDC accomplishes its mission through advocacy, litigation, and publication and/or distribution of books, magazines and other information concerning prisons and the rights of incarcerated persons.  Prison Legal News is a wholly-owned project and publishing arm of HRDC.  Through its publishing project, HRDC engages in core protected speech and expressive conduct on matters of public concern, such as the operation of correctional facilities, prison and jail conditions, and the health, safety and constitutional and human rights of incarcerated persons.  HRDC publishes and distributes two monthly magazines covering corrections and criminal legal news and analysis, and publishes and distributes books about the criminal legal system and legal issues affecting incarcerated persons, which HRDC distributes by mail to incarcerated persons, lawyers, courts, libraries, and the public throughout the United States.

9.    Defendant MICHELLE LUJAN GRISHAM is the Governor of STATE OF NEW MEXICO and the Chief Executive of the state government.  As Governor she is obligated under state law to supervise the official conduct of all executive branch officers and to see that all offices are filled and their duties lawfully performed.  Defendant LUJAN GRISHAM has the authority to appoint and remove the subordinate defendants named herein.  Governor LUJAN GRISHAM retains the ultimate state authority over the management and operations of NMCD facilities.  She is sued in her individual and official capacities.

10.    Nonparty The New Mexico Corrections Department (the "NMCD" or the "Department") is a cabinet-level agency of the State of New Mexico organized and existing under the laws of the State of New Mexico.  NMCD has 10 adult correctional

facilities.  Eight of these facilities are directly operated by NMCD including:  Central

New Mexico Correctional Facility ("CNMCF"), Guadalupe County Correctional Facility

("GCCF"), Northeast New Mexico Correctional Facility ("NENMCF"), Penitentiary of

New Mexico ("PNM"), Roswell Correctional Center ("RCC"), Springer Correctional

Center ("SCC"), Southern New Mexico Correctional Facility ("SNMCF"), and Western

New Mexico Correctional Facility ("WNMCF").  The remaining two facilities are

operated by separate private companies:  Lea County Correctional Facility ("LCCF"),

which is operated by Defendant The GEO Group, Inc. ("GEO"), and the Otero County

Prison Facility ("OCPF"), which is operated by non-party Management & Training

Corporation.

11.     Defendant ALISHA TAFOYA LUCERO is the Cabinet Secretary for

NMCD and has held that position since 2019.  Defendant TAFOYA LUCERO is

employed by and is an agent of STATE OF NEW MEXICO and NMCD.  She is

responsible for overseeing the management and operations of NMCD, and for the hiring,

screening, training, supervision, discipline, counseling, and control of the personnel at

NMCD who interpret and apply its incoming mail policies.  As Cabinet Secretary,

Defendant TAFOYA LUCERO is a final policymaker for NMCD with respect to the

operation of its facilities, including for policies, practices, and customs governing

incoming mail for incarcerated persons.  She is sued in her individual and official

capacities.

12.     Defendant GARY MACIEL is the Deputy Secretary for NMCD and has

held that position since 2023, prior to which he served as Director and previously Deputy

Director of the Adult Prisons Division ("APD"). Defendant MACIEL is employed by and is an agent of STATE OF NEW MEXICO and NMCD. As Deputy Secretary, and previously as Director of APD and Deputy Director of APD, Defendant MACIEL is and was a policymaker for STATE OF NEW MEXICO and NMCD with respect to the operation of the prison facilities, including for policies, practices, and customs governing incoming mail for incarcerated persons. He is sued in his individual and official capacities.

13.    Defendant MELANIE MARTINEZ is the Deputy Secretary for NMCD and has held that position since 2023, prior to which she served as Director of the Probation and Parole Division since 2019. Defendant MARTINEZ is employed by and is an agent of STATE OF NEW MEXICO and NMCD. As Deputy Secretary, Defendant MARTINEZ is a policymaker for STATE OF NEW MEXICO and NMCD with respect to the operation of the prison facilities, including for policies, practices, and customs governing incoming mail for incarcerated persons. She is sued in her individual and official capacities.

14.    Defendant BRIAN R. EVANS is the Chief Executive Officer of Defendant GEO and has held that position since January 1, 2024, prior to which he served in senior management at the company. Defendant EVANS is employed by and is an agent of Defendant GEO. As Chief Executive Officer, Defendant EVANS is a policymaker for Defendant GEO with respect to the operation of the LCCF, including for policies, practices, and customs governing incoming mail for incarcerated persons. He is sued in his individual and official capacities.

15.     Defendant WAYNE H. CALABRESE is the President and Chief Operating Officer of Defendant GEO and has held that position since January 1, 2024, prior to which he served in senior management at the company.  Defendant CALABRESE is employed by and is an agent of Defendant GEO.  As President and Chief Operating Officer, Defendant CALABRESE is a policymaker for Defendant GEO with respect to the operation of the LCCF, including for policies, practices, and customs governing incoming mail for incarcerated persons.  He is sued in his individual and official capacities.

16.     Defendant GEO is, and at all relevant times herein was, a private company responsible for operating the LCCF, which is one of Defendant NMCD's ten facilities. Defendant GEO is an agent of NMCD and responsible for the actions and/or inactions and the policies, procedures, customs, and practices of the LCCF and its employees and agents.  GEO is responsible for adopting and implementing mail policies governing incoming mail for incarcerated persons at the LCCF.

17.     The true names and identities of Defendants DOES 1 through 20 are presently unknown to HRDC.  Each of Defendants DOES 1 through 20 are or were employed by and are or were agents of the State of New Mexico, NMCD, and/or Defendant GEO, were personally involved in the adoption and/or implementation of the policies, practices, and customs governing incoming mail for incarcerated persons at NMCD, and/or are or were responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and/or control of the personnel who interpret and implement these incoming mail policies, practices, and customs.  They are sued in their

individual and official capacities.  Plaintiff will seek to amend this Complaint when the true names and identities of Defendants DOES 1 through 20 have been ascertained.

18.    The true names of ENTITIES 1-10 are presently unknown to HRDC. ENTITIES 1-10 are, upon information and belief, entities which operate in and have substantial ties to the named Defendants.  Said Defendants have, upon information and belief, helped to cause the incidents alleged herein under the authority and color of state law.  Plaintiff will seek to amend this Complaint when the true names and identities of ENTITIES 1-10 have been ascertained.

19.    At all times material to this action, all Defendants were acting within the course and scope of their employment as agents and/or employees of the State of New Mexico, the NMCD, Defendant GEO, and/or ENTITIES 1-10.

## FACTUAL ALLEGATIONS

20.    For over thirty-four years, the focus of HRDC's mission has been public education, advocacy and outreach on behalf of, and for the purpose of assisting, incarcerated persons who seek legal redress for infringements of their constitutionally guaranteed and other basic human rights.  HRDC's mission, if realized, has a salutary effect on public safety.

21.    To accomplish its mission, HRDC publishes and distributes books, magazines, and other materials containing news and analysis about prisons, jails and other detention facilities, the rights of incarcerated persons, court rulings, management of prison facilities, prison and jail conditions, and other matters pertaining to the rights and/or interests of incarcerated persons.  HRDC's publications contain political speech

and social commentary, which are core First Amendment rights and are entitled to the highest protection afforded by the United States Constitution.

22.    Sending publications through the mail to incarcerated persons is essential to accomplishing the mission of HRDC.  The primary aim of HRDC is to communicate with incarcerated persons about developments in the law and protection of one's health and personal safety while in prison or jail.  Reading materials enable incarcerated persons to engage in productive activity rather than sitting idle, thus helping to avoid conflicts and incidents of violence in correctional facilities and encouraging lawful methods of dispute resolution.  In addition, reading allows incarcerated persons to keep their minds sharp, helping them prepare to become productive citizens when released back into society.

23.    HRDC publishes and distributes an award-winning monthly magazine titled *Prison Legal News: Dedicated to Protecting Human Rights* ("*Prison Legal News*"), which contains news and analysis about correctional facilities, the rights of incarcerated persons, court opinions, prison and jail conditions, excessive force, and religious freedom.  *Prison Legal News* is published on newsprint bound by two small staples, and is 72 pages long.

24.    HRDC also publishes and distributes a second monthly magazine titled *Criminal Legal News*: *Dedicated to Protecting Human Rights* ("*Criminal Legal News*"), which contains news and analysis about individual rights, court rulings, and other criminal legal-related issues.  *Criminal Legal News* is also published on newsprint bound by two small staples, and was 48 pages long, but has more recently expanded to 56 pages long.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

25.     HRDC also publishes and/or distributes several different soft-cover books on criminal justice, health, and legal issues that are of interest to incarcerated persons and others.  HRDC publishes and distributes the book *The PLRA Handbook*, which is a detailed guide for litigants practicing under the Prison Litigation Reform Act.  HRDC does not publish, but is the sole national distributor of the book *Protecting Your Health and Safety* ("*PYHS*"), which describes the rights, protections and legal remedies available to persons concerning their health and safety while they are incarcerated.

26.     HRDC also annually publishes and distributes *Annual Report* booklets regarding HRDC's activities and funding over a year-long period.  The *Annual Report* is also published on newsprint bound by two small staples, and vary in length recently on the order of 20-30 pages.

27.     In addition to its publications, HRDC also communicates with incarcerated persons through the United States Postal Service by sending and receiving letters with pertinent information about HRDC's publications and related topics and sending subscription renewal letters.

28.     Since 1990, HRDC has sent its publications and books by mail to incarcerated persons and law librarians in more than 3,000 correctional facilities in all fifty states, including at death row housing units and "supermax" prisons, including the federal Administrative Maximum Facility at Florence, Colorado, which is known as the most secure prison in the United States.  The publications and books that HRDC distributes have been mailed to hundreds of persons incarcerated in New Mexico including in the NMCD facilities operated by the state and by the private companies

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

Management & Training Corporation and The GEO Group, Inc., as well as in the Rio

Arriba County Jail, Metropolitan Detention Center in Bernalillo County, San Miguel

County Detention Center, McKinley County Jail, Valencia County Detention Center, San

Juan Adult Detention Center, Dona Ana County Detention Center, FCI La Tuna operated

by the US Bureau of Prisons, and the Torrance County Detention Facility and Cibola

County Detention Center housing ICE detainees.

29.    Some of NMCD's written policies, procedures, and practices are available

on its public website at https://www.cd.nm.gov/policies/ (last visited October 24, 2024).

Defendants' publicly available current policies and procedures regarding incoming mail

for persons incarcerated at Defendants' prisons, Policy CD-151200 Correspondence

Regulations (the "Mail Policy"), is hyperlinked under the "Inmate Rights" section of the

website at https://www.cd.nm.gov/wp-content/uploads/2023/12/CD-151200-1.pdf (last

visited October 24, 2024).  According to the Mail Policy it was last revised on

September 27, 2023.  The prior versions of the Mail Policy in effect during the relevant

timeframe (the "April 8, 2022 Mail Policy" and the "February 23, 2015 Mail Policy")

were posted on Defendant NMCD's website and are archived and available online.  The

April 8, 2022 Mail Policy is available at

http://web.archive.org/web/20230530224748/https://www.cd.nm.gov/wp-

content/uploads/2022/09/CD-151200.pdf (last visited October 24, 2024).  The

February 23, 2015 Mail Policy is available at

http://web.archive.org/web/20211224071430/https://cd.nm.gov/wp-

content/uploads/2021/04/CD-151200.pdf (last visited October 24, 2024).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

30.    Not all of NMDC's written policies, procedures, or practices are available online.  HRDC obtained a memorandum dated December 29, 2021, addressed to "Offender Families" from NMCD, with the subject line "Re: Inmate Mail Changes."  The memorandum is not signed by any individual but is on NMCD letterhead bearing the names of Defendant LUJAN GRISHAM, Governor, and Defendant TAFOYA LUCERO, Cabinet Secretary.  The memorandum announced that beginning February 1, 2022, "personal mail will no longer be accepted at state-run prison facilities" and it lays out a process for sending personal mail to a third party for processing.  The memorandum notes that LCCF and OCPF, the two privately operated facilities, "will continue to accept personal mail."  The memorandum does not define "personal mail" or announce any changes about how publications mailed by a publisher or vendor will be treated.  Handling of publications mailed by a publisher or vendor is a topic covered in the Mail Policy.  Both the current Mail Policy and the prior April 8, 2022 Mail Policy postdate the memorandum.

31.    Defendants' current Mail Policy attaches blank copies of Defendants' Mail Rejection form (CD-151201.1) and the Publication Review Panel Determination (CD-151201.4) and also provides the following policies and procedures in pertinent part:

**C. Publications: [5-ACI-7D-04]**

1. Inmates will be allowed to receive publications when received directly from the publisher or vendor, pursuant to specified criteria described in rejection of mail procedures below.

2. Inmate housed in Level I, II, and III facilities, may access newspaper publications at the facility library during normal business hours.

3. Junk mail, pamphlets, leaflets, brochures, etc., will be judged by the same standards as other correspondence; however, any incoming mail not addressed to an inmate may be discarded at the discretion of prison officials.

…

**E. Inspection of Mail:**

1. All mail, both incoming and outgoing letters, publications, and packages, excluding legal mail and privileged correspondence, may be opened, and will be routinely inspected for contraband, cash, checks, and money orders. Mail is read, censored, or rejected based on legitimate institutional interest of order and security. **[5-ACI-7D-05] [5-ACI-7D-07]**

…

**I. Rejection of Mail, Enclosures and Publications:**

1. Mail, enclosures, packages and publications will be rejected if they are detrimental to internal security of the institution or other legitimate penological interests. Rejection examples below may not be all inclusive but are intended as a reference:

a. Item contains contraband.

b. Item facilitates criminal activity.

c. Item contains single photo of inmate.

d. Item depicts, describes, or encourages activities which may lead to the use of physical violence or group disruption.

e. Item instructs how to build weapons, ammunition, bombs, or incendiary devices.

f. Item depicts or describes procedures for the brewing of alcoholic beverages or the manufacture of drugs.

g. Item depicts or describes methods or procedures for smuggling prison contraband.

h. Item depicts or describes techniques or methods for rioting or information instructive in hostage or riot negotiation techniques.

i. Item depicts, encourages, or describes methods of escape from secure facilities.

j. Item contains blueprints, maps, drawings, or other descriptions of in-state or out-of-state secure facilities.

k. Item contains detailed or topographical maps of other states or the state of New Mexico, which could aid an incarcerated individual in an escape.

l. Item contains a pictorial depiction of nudity or a pictorial depiction of sexual activity, unless the item, taken as a whole, is literary, artistic, educational, or scientific in nature.

m. Item contains child pornography, promotes sexual exploitation of children, depicts or portrays models of any age as children in sexual provocative poses or engaged in sexual activity, or depicts full or partial nudity of children in a non-pornographic context but, which could promote or encourage prurient interest in the sexual performance of child.

n. Item contains written sexually explicit material which, by its nature or content, poses a threat to the security, good order, or discipline of the correctional facility.

o. Item depicts or describes hand signs, insignias, graffiti, or any other identifiers depicting or pertaining to a gang, or text that describes or depicts gang or other unauthorized group activity in such a way that it would promote or instruct in the formation of such groups inside a correctional facility.

p. Item contains information which appears to be written in code or other attempts to circumvent correspondence regulations and is deceptive.

q. Item violates facility rules and regulations.

2. Hardbound publications are prohibited.

3. Items will not be rejected solely because content is religious, philosophical, political, social, sexual, unpopular or repugnant.

…

7. When mail items, enclosures, or packages are rejected the inmate and the sender will be notified in writing on the Mail Rejection form *(CD-151201.1)* with the reason for the rejection indicated. **[5-ACI-7D-05]**

8. Rejected outgoing mail shall be withheld, photocopied and filed for future reference, prior to return or destruction.

9. Rejection of publications will require review by the publication review

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

panel, consisting of three staff members designated by the Deputy Director of Adult Prisons. The panel will determine whether the rejection is necessary and whether the rejected material poses a security risk detrimental to penological interest.

10. Rejection of publications will be made on an individual basis. Subscription based publications will not be placed on a permanent excluded list and shall be reviewed as to each individual subscription issue and rejected on each individual issue.

11. When publications are rejected, the inmate will be notified in writing on the Publication Review Panel Determination form *(CD-151201.4)*.

12. Rejections of any mail, enclosure or publication that an inmate claims to be religious should be reviewed by NMCD legal counsel.

13. Any inmate whose mail, enclosure, package or publication is rejected may contest the rejection through the inmate grievance procedure.

32.    Defendants' Mail Policy is unconstitutional on its face and as applied, and is unduly broad and vague.  This is especially true because the books and magazines published and/or distributed by HRDC cover topics of great public concern and contain core protected speech, including political speech and social commentary, and educational information relating to the rights of incarcerated persons, pertinent legal cases, and incarcerated persons' health and safety, and are thus entitled to the highest protection afforded by the First Amendment to the United States Constitution.

33.    The grounds whereby Defendants may reject mailed publications listed in Defendants' Mail Policy are overly broad and/or too vague for a sender to understand what is prohibited and what is permissible.

34.    Defendants' Mail Policy also does not clearly provide any requirement for notice of censorship to the senders of publications.  Although the Mail Policy requires such notice for "mail items, enclosures, or packages" provided via the Mail Rejection

form (CD-151201.1), the process for publications requires notice only to the intended recipient and not the sender as follows: "When publications are rejected, the inmate will be notified in writing on the Publication Review Panel Determination form *(CD-151201.4)*."

35.    Additionally, while Defendants' Mail Policy provides "Any inmate whose mail, enclosure, package or publication is rejected may contest the rejection through the inmate grievance procedure" it does not provide for any appeals process by which a sender such as HRDC may challenge a decision by Defendants to reject publications or other mailings for delivery to incarcerated persons at Defendants' prisons.

36.    The prior versions of Defendants' Mail Policy—the April 8, 2022 Mail Policy and the February 23, 2015 Mail Policy—reflect various changes to the relevant policies and procedures over time. Neither of these policies is any clearer or more protective of HRDC's constitutional rights to free speech and due process at issue here.

37.    Defendants' non-public written policy or procedure in the December 29, 2021 memorandum is likewise unconstitutional to the extent it was or is being applied to publishers distributors such as HRDC. That policy provides that "[a]t all private and state-run facilities moving forward, mail will no longer be accepted that is comprised of cardboard or other rigid parchment incapable of running through the scanner. For example, USPS postal rigid express envelopes that lay flat but do not bend without creasing would not be accepted and magazines will not be accepted."

38.    From at least March 2022 to the present, Defendants have been censoring books, magazines and other correspondence mailed by HRDC to incarcerated persons

held in custody in Defendants' prisons by refusing to deliver the publications and

correspondence to the intended recipients, and by returning the items to HRDC's office

via the Return to Sender service of the United States Postal Service, at Plaintiff's

expense.  Since at least February 2022, subscribers have been writing to HRDC to

complain of censorship, although HRDC did not begin to receive returned items until

March 2022.

39.    HRDC has identified at least one hundred fifty-two (152) instances in the

period from February 2022 through September 2024 where publications and

correspondence that HRDC mailed to incarcerated persons, individually addressed and

separately mailed with postage fully paid, were not delivered to intended recipients who

were still incarcerated at Defendants' prisons when the items arrived in the mail, and

were instead returned to sender.  This includes at least 139 items sent to individuals at

four of the eight NMCD facilities operated by the state—namely SNMCF, PNM,

NENMCF, and CNMCF—plus at least 13 additional items sent to individuals at the

LCCF operated by Defendant GEO.  This includes at least seventy-three (73) issues of

*Prison Legal News*, forty-eight (48) issues of *Criminal Legal News*, twenty (20) copies of

the book *PYHS*, nine (9) copies of HRDC's *Annual Reports*, one (1) copy of the book *The

PLRA Handbook*, and one (1) renewal letter sent to a subscriber.  Each of these items was

not delivered to the intended recipient at Defendants' prisons, and was instead returned to

HRDC's office by Defendants using the Return to Sender service of the United States

Postal Service.  For each of these instances, HRDC staff confirmed that the intended

recipient was still incarcerated with the Department at the time that the mailing was

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

returned to HRDC via the Return to Sender service. In the each of these cases HRDC

staff confirmed via NMCD's public "Offender Search" service that the intended recipient

was still in custody and housed at the same facility to which the mail had been sent.

40.     HRDC is informed and believes that numerous additional publications and

correspondence mailed to persons incarcerated at the NMCD have been censored by

Defendants and are being censored on an ongoing basis. HRDC has mailed over 1,000

individual copies of its monthly *Prison Legal News* and *Criminal Legal News* magazines

to NMCD subscribers during the relevant timeframe all of which presumably arrived in

the mail as addressed even though HRDC has only received a fraction of those magazines

returned to sender. At the same time, HRDC has received dozens of letters from

incarcerated persons complaining of censorship, some of whom enclosed rejection

notices asserting that newspapers and magazines are prohibited.

41.     The publications and correspondence that Defendants refused to deliver

were returned to Plaintiff with various vague markings including ink stamps and/or

handwritten markings crossing out portions of the mailing address, either no other

markings, or with various combinations of crude handwritten notations such as "RTS,"

"REF," "Refused," and/or "Denied," with one case noting "NOT AUTHORIZED," one

case noting "Newspapers/Magazines Prohibited," one case noting "Magazines Not

Allowed Nor Newspapers" one case incorrectly indicating "Postage Due," and in one

other case affixing a label stating only "REFUSED VIOLATES DOC MAIL RULE."

42.     Although Defendants' Mail Policy provides generally that "Inmates will

have access to publications" Defendants nonetheless refused to deliver twenty-one (21)

soft-cover books mailed by HRDC to incarcerated persons at NMCD facilities—

including one (1) copy of the PLRA Handbook marked as "NOT AUTHORIZED."  The

remaining twenty (20) books were copies of *PYHS*.  Of these, four (4) were returned with

no markings at all other than crossing out the mailing address, another eight (8) were

returned with the markings "Denied Refused" handwritten in ink on the outside of the

mailing package, another seven (7) were returned with the handwritten abbreviation

"RTS" on the outside of the mailing package including one instance with additional

markings on the edges of the package "x 1150" and "1150" and another instance with the

additional handwritten markings "Key" and an arrow pointing toward the marking

"RTS."  None of these returned books included any information as to why Defendants

refused to deliver them to the intended recipients.  The remaining one (1) book was

returned with the handwritten marking "Postage Due" despite being properly addressed

and metered and apparently delivered to the institution, and included no other

information as to why Defendants refused to deliver it to the intended recipient.

43.    Defendants also refused to deliver at least one hundred and twenty-one

(121) issues of HRDC's monthly magazines and nine (9) *Annual Report* booklets to

incarcerated persons.  One (1) of these had no markings other than handwritten markings

crossing out the mailing address.  One (1) was marked "Newspapers/Magazines

Prohibited," one (1) was marked "Magazines Not Allowed Nor Newspapers."  The vast

majority included one or more of the handwritten notations "RTS" and "REF" and/or one

of two ink stamps.  The first ink stamp consisted of the phrase "RETURN TO SENDER"

next to an image of a hand pointing to the left, but without any other information

provided.  The other ink stamp consisted of the phrase "RETURN TO SENDER" inside

an image of a hand pointing to the left with the marking "INIT ___" to the right of the

hand, followed by five short statements with checkboxes directly underneath which read

as follows with the "No Longer Here" checkbox marked by hand:

     □ NMCD #

     □ No Longer Here

     □ Paroled

     □ Discharged

     □ Unauthorized Content

In nine (9) of the instances HRDC received United States Postal Service return cards with

both scans of handwritten notations by Defendants and typed notations that appear to

have been generated by the Postal Service rather than Defendants.  The return card

notations included "Unable to Forward," Not Deliverable as Addressed" or "Refused."

Defendants provided no other information as to the basis for their decision to refuse to

deliver the monthly magazines and Annual Report booklets to their intended recipients.

     44.    Defendants refused to deliver one (1) renewal letter mailed by HRDC to a

person incarcerated at NMCD.  The letter was returned with a label on the front of the

mailing envelope stating "REFUSED VIOLATES DOC MAIL RULE" and with a stamp

on the back of the mailing envelope with six check-boxes and accompanying phrases.

One of the checkboxes was marked next to the phrase "LEGAL/PRIVILEGED."  The

return did not include any information as to which rule was allegedly violated and

contained no other information as to why Defendants refused to deliver the letter to the

intended recipient.

45.     On December 15, 2022, HRDC received a letter on NMCD letterhead signed by staff at the Penitentiary of New Mexico Mailroom stating, in totality: "To whom it may concern, Inmates at the Penitentiary of New Mexico are not allowed to have any Publications."  This letter was not tied to any specific censorship decisions and provided no opportunity to appeal those decisions.

46.     Defendants did not provide HRDC with notice or opportunity to appeal the censorship decisions in any of the instances where Defendants refused to deliver its publications and correspondence mailed to persons incarcerated at the Department's facilities.  HRDC has not been informed and is not aware of any review by a "publication review panel, consisting of three staff members designated by the Deputy Director of Adult Prisons" for the censored items, as is required by the Mail Policy "as to each individual subscription issue" that is censored.  Defendants did not provide HRDC with notice of the reason any mailing was rejected beyond vague markings on the outside of items returned via the United States Postal Service's Return to Sender service.  Nowhere on the returned items of mail was notice provided of a right to challenge the censorship decision, or any information on whether or how HRDC could appeal Defendants' rejection of the items of mail.  In each instance of censorship, Defendants also did not provide HRDC any opportunity to appeal the decision to refuse to deliver the publication or correspondence to the intended recipient.  Nor, as discussed above, does Defendants' current Mail Policy provide for a clear requirement to notify senders of censored publications or provide for any appeals process by which a sender may challenge a

censorship decision. Even after HRDC contacted Defendants NMCD and TAFOYA

LUCERO regarding the censorship and violation of its right to due process, Defendants

did not provide any notice of the reason(s) for the rejections of HRDC's mailings or an

opportunity to appeal the censorship decisions.

47.    Defendants' conduct prohibiting or not delivering HRDC's mailed

publications and correspondence to persons incarcerated at NMCD violates the First

Amendment by censoring HRDC's freedom of speech and expression, and has a chilling

effect on future speech and expression directed at the persons incarcerated at NMCD.

48.    HRDC will continue to mail books, magazines, and other correspondence

to subscribers, customers, and other persons incarcerated at NMCD.

49.    The accommodation of the free speech, free expression, and due process

rights of HRDC will not have any significant impact on NMCD's staff, other incarcerated

persons at the Department, Defendants' allocation of resources, or security at the

Department's facilities.

50.    Due to Defendants' actions as described above, HRDC has suffered

damages, and will continue to suffer damages, including, but not limited to:  the

suppression of HRDC's speech and press; the impediment of HRDC's ability to

disseminate its political message; frustration of HRDC's non-profit organizational

mission; diversion of resources; the loss of potential subscribers and customers; an

inability to recruit new subscribers and supporters; the loss of reputation; and the cost of

printing, handling, mailing, and staff time, among other damages.

51.    The individual Defendants' actions and inactions were and are undertaken

with reckless disregard for Plaintiff's rights and/or motivated by ill motive and intent, and were and are all committed under color of law with deliberate indifference to HRDC's rights.

52.    Defendants are responsible for or personally participated in creating and implementing these unconstitutional policies, practices, and customs, or for ratifying or adopting them.  Further, the individual Defendants are responsible for training and/or supervising the staff persons whose conduct has injured and continues to injure HRDC.

53.    Defendants' unconstitutional policy, practices, and customs are ongoing, continue to violate HRDC's rights, and were and are the moving force behind the injuries HRDC suffered as a direct result of the constitutional violations.  As such, HRDC has no adequate remedy at law.

54.    Plaintiff is entitled to injunctive relief prohibiting Defendants from refusing to deliver or refusing to allow delivery of publications and correspondence mailed by HRDC to incarcerated persons at NMCD, and prohibiting Defendants from censoring mail without due process of law.

## FIRST CLAIM FOR RELIEF
**(Violations of the First Amendment (Free Speech)—42 U.S.C. § 1983)**

55.    HRDC re-alleges and incorporates the allegations of paragraphs 1 through 54 of the Complaint as if fully set forth herein.

56.    Defendants' acts described above constitute violations of HRDC's right to communicate with persons incarcerated at NMCD under the First Amendment to the United States Constitution.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

57.     Defendants' conduct was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

58.     HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by Defendants' policies, practices, and customs, which were and are the moving force of the violations.

59.     Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

60.     HRDC seeks declaratory and injunctive relief, and nominal and compensatory damages against all Defendants.  HRDC also seeks punitive damages solely against the individual Defendants in their individual capacities.

## SECOND CLAIM FOR RELIEF
### (Violation of the Fourteenth Amendment (Due Process)—42 U.S.C. § 1983)

61.     HRDC re-alleges and incorporates the allegations of paragraphs 1 through 60 of the Complaint as if fully set forth herein.

62.     HRDC has a constitutionally-protected liberty interest in communicating with persons incarcerated at NMCD by sending publications and correspondence to them via the United States Postal Service, a right clearly established under existing case law.

63.     HRDC has the right under the Due Process Clause of the Fourteenth Amendment to receive notice and an opportunity to object and/or appeal Defendants' decisions to prevent the publications and correspondence mailed by HRDC from reaching the intended recipients incarcerated at NMCD.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

64.     Defendants have failed to give HRDC sufficient notice of the censorship of its publications and correspondence, and an opportunity to be heard with respect to that censorship.  In doing so, Defendants have deprived and continue to deprive HRDC of liberty and property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

65.     Defendants' conduct was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

66.     HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by Defendants' policies, practices, and customs, which were and are the moving force of the violations.

67.     Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

68.     HRDC seeks declaratory and injunctive relief, and nominal and compensatory damages against all Defendants.  HRDC also seeks punitive damages solely against the individual Defendants in their individual capacities.

**REQUEST FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests relief as follows:

1.     A declaration that Defendants' policies, practices, and customs violate the First and Fourteenth Amendments to the United States Constitution;

2.     A preliminary and permanent injunction preventing Defendants and their employees, agents, and any and all persons acting in concert with them from further

violation of HRDC's civil rights under the First and Fourteenth Amendments to the

United States Constitution; and providing other equitable relief;

3.     Nominal damages for each violation of HRDC's rights by the Defendants;

4.     Compensatory damages in an amount to be proved at trial;

5.     Punitive damages against the individual Defendants in an amount to be

proved at trial;

6.     Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and

under other applicable law; and

7.     Any other relief that this Court deems just and equitable.


October 25, 2024                              ROSEN BIEN GALVAN & GRUNFELD LLP


                                              By: */s/ Marc J. Shinn-Krantz*
                                                  Ernest Galvan, Cal. Bar No. 196065
                                                  Marc J. Shinn-Krantz, Cal. Bar No. 312968
                                                  Attorneys for HUMAN RIGHTS
                                                  DEFENSE CENTER
                                                  101 Mission Street, Sixth Floor
                                                  San Francisco, California 94105-1738
                                                  Telephone: (415) 433-6830
                                                  Facsimile: (415) 433-7104
                                                  * *Pro Hac Vice* Application to be filed


October 25, 2024                              HUMAN RIGHTS DEFENSE CENTER


                                              By:*/s/ Jonathan P. Picard*
                                                  Jonathan P. Picard, Fla. Bar No. 105477
                                                  P.O. Box 1151
                                                  Lake Worth, Florida  33460
                                                  Attorneys for HUMAN RIGHTS DEFENSE
                                                  CENTER

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

Telephone: (561) 360-2523
Facsimile: (561) 828-8166
* *Pro Hac Vice* Application to be filed

October 25, 2024                          IVES & FLORES P.A.


By:*/s/ Adam C. Flores*
    Laura Schauer Ives, SB# 12463
    Adam C. Flores, SB# 146686
    Attorneys for HUMAN RIGHTS DEFENSE
    CENTER
    925 Luna Circle NW
    Albuquerque, New Mexico  87102
    Telephone: (505) 364-3858
    Facsimile: (505) 364-3050

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES