IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HUMAN RIGHTS DEFENSE CENTER,

      Plaintiff,

vs.                                                       No. 1:24-cv-01091-MIS-KRS

MICHELLE LUJAN GRISHAM,
individually and in her capacity as Governor
of the State of New Mexico; ALISHA
TAFOYA LUCERO, individually and in
her capacity as Cabinet Secretary of the
New Mexico Corrections Department;
MELANIE MARTINEZ, individually and
in her capacity as Deputy Secretary of the
New Mexico Corrections Department;
GARY MACIEL, individually and in his
capacity as Deputy Secretary of the
New Mexico Corrections Department;
BRIAN R. EVANS, individually and in
his capacity as Chief Executive Officer of
The GEO Group, Inc.; WAYNE H. CALABRESE,
individually and in his capacity as President and
Chief Operating Officer of The GEO Group, Inc.;
THE GEO GROUP, INC. d/b/a LEA COUNTY
CORRECTIONAL FACILITY, a corporation;
JOHN AND JANE DOES 1-20, individually and
in their official capacities; and ENTITIES 1-10,

      Defendants.

**DEFENDANT THE GEO GROUP, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [doc. 3]**

     Defendant The GEO Group, Inc., by and through its attorneys of record, YLAW, P.C. (Michael S. Jahner), hereby submits the following Response in Opposition to Plaintiff Human Rights Defense Center's Motion for Preliminary Injunction [doc. 3]. For the reasons discussed herein, Plaintiff has not carried its burden of persuasion by a clear showing and the request for injunctive relief as against GEO must be denied.

1

I.  **Background and Introduction**

Plaintiff Human Rights Defense Center ("HRDC"), a foreign not-for-profit organization, publishes and distributes various books, magazines, and other materials concerning prisons and the rights of incarcerated persons. (Complaint [doc. 1] at ¶ 8.). HRDC sends publications through the mail to prisoners. (*Id*. ¶ 22). The New Mexico Corrections Department ("NMCD") has adopted policies and procedures that govern inmate correspondence and mail. (*Id*. ¶¶ 29-31). HRDC contends NMCD's mail policy is unconstitutional for a wide variety of reasons, including that it is overly broad and/or too vague for a sender to understand what is prohibited and what is permissible, that it does not clearly provide any requirements for notifying senders that their publications have been censored, and that it provides no mechanism by which senders may contest the rejection of a publication. (*Id*. at ¶¶ 32-37). HRDC filed suit on October 25, 2024 asserting claims pursuant to 42 U.S.C. § 1983 for violation of the First Amendment (Free Speech) and for violation of the Fourteenth Amendment (Due Process). (*See generally, id*.).

Concurrently with the Complaint, HRDC filed a stock "Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction." [doc. 3].[1] HRDC seeks to broadly enjoin all of the parties-Defendants, including the Governor of the State of New Mexico, "from implementing unconstitutional mail policies and practices and refusing to deliver [HRDC's] publication and correspondence to incarcerated persons in Defendants' custody in violation of Plaintiff's right to free speech and due

---

[1] HRDC has filed very similar motions in cases targeting other governmental entities in New Mexico. *See e.g. Hum. Rts. Def. Ctr. v. Bd. of Cnty. Commissioners of Cnty. of San Miguel, NM*, No. 18 CV 00355 JAP/SCY, 2018 WL 3972922, at *2 (D.N.M. Aug. 20, 2018); *Hum. Rts. Def. Ctr. v. Bd. of Cnty. Commissioners of the Cnty. of Santa Fe Cnty., NM*, No. 118CV00305PJKSCY, 2018 WL 3068061, at *1 (D.N.M. June 21, 2018); *Prison Legal News v. Cnty. of Bernalillo*, No. 15 CV 107 JAP/KBM, 2015 WL 13662872, at *3 (D.N.M. June 16, 2015)

process under the Constitution of the United States." (Motion for Preliminary Injunction [doc. 3] at p. 2).[2]

This Response focuses exclusively on HRDC's request for injunctive relief vis-à-vis Defendant The GEO Group, Inc. ("GEO"). Indeed, for the duration of this proceeding, it will be important to acknowledge the limited role GEO plays in housing NMCD's inmate population and GEO's lack of control over and inability to effectuate changes to the challenged NMCD policies. There are ten (10) adult correctional facilities in the State of New Mexico. (Complaint [doc. 1] at ¶ 10). GEO is involved in the operation of only one of those ten facilities: the Lea County Correctional Facility ("LCCF") in Hobbs. (Ex. A, Affidavit of Facility Administrator David Cole). GEO's involvement in the operation of LCCF is dictated by two contracts. (*Id.*). Lea County contracts with NMCD to house state prisoners at LCCF. (*Id.*; see also Ex. B, Excerpts from Amended Agreement Between NMCD and Lea County). Lea County, in turn, contracts with GEO to provide certain management and operations services at LCCF. (Ex. A; Ex. C, Excerpts from Facility Provision, Management and Operations Agreement). GEO does not contract directly with NMCD, but is nevertheless contractually obligated to adhere to NMCD's policies and procedures, including its policies and procedures governing inmate correspondence and mail. (Exs. A-C).

In its repetitive, self-laudatory court filings, HRDC makes claims of widespread unconstitutional censorship by "Defendants", treating GEO indistinguishably from the public entities and public officials HRDC has also sued. A careful review of those filings reveals HRDC's Complaint and Motion for Preliminary Injunction have very little to do with GEO. From February 1, 2022 through October 23, 2024, a period of nearly thirty-three (33) months, HRDC has

---

[2] The page numbers on HRDC's Motion for Preliminary Injunction do not correspond to the page numbers on the Court's electronic file stamp. For clarity, the page numbers identified in this Response refer to those on the Court's electronic file stamp and not to those on HRDC's Motion.

3

identified thirteen (13) instances in which it claims items of mail sent by HRDC to prisoners at LCCF were "censored." (Motion for Preliminary Injunction [doc. 3] at p. 7). Those thirteen instances of censorship are purportedly documented in a spreadsheet contained within Exhibit A to the Declaration of Paul Wright. (*See* Wright Declaration [doc. 3-2] at p. 26).

HRDC contends its spreadsheet demonstrates that copies of a book entitled "Protecting Your Health and Safety" were sent by HRDC to inmates Richard Griego, Luis Coberrubia, Peter Duran, Scott Foster, Jesus Cartagena, Kevin Ogden, Glenn Gumbrecht, and Joe Chavez at LCCF but were "censored" by GEO employees. (*Id*.). The spreadsheet also supposedly demonstrates that four issues of Prison Legal News that were sent to Marcus Aragon and one issue that was sent to "Frank Dombros" were "censored." (*Id*.). HRDC claims it confirmed each of the above-named inmates was housed at LCCF at the time of the censorship and that there was no justifiable reason for refusing the publications. (*See* Wright Declaration [doc. 3-2] at pp. 7,9). Based on this supposed evidence, HRDC asks the Court to issue an injunction prohibiting "GEO" "from implementing unconstitutional mail policies and practices and refusing to deliver [HRDC's] publication and correspondence to incarcerated persons in Defendants' custody in violation of Plaintiff's right to free speech and due process under the Constitution of the United States." (Motion for Preliminary Injunction [doc. 3] at p. 2). As discussed further below, HRDC has not made a clear showing of entitlement to injunctive relief as against GEO, and its Motion should be denied.

## II.   Standard for Granting Preliminary Injunctive Relief

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). "A preliminary injunction has the limited purpose of preserving the relative positions of the parties until a trial on the merits can be held." *DTC Energy*

*Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1269–70 (10th Cir. 2018)(citation and internal quotation marks omitted.) "A party may be granted a preliminary injunction only when monetary or other traditional legal remedies are inadequate, and the right to relief is clear and unequivocal." *Id.* (citation and internal quotation marks omitted). In conducting its review, a court must determine whether the moving party can demonstrate: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Attorney Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009).

When the moving party seeks relief that falls into one of the categories of historically disfavored preliminary injunctions, *i.e.*, those which alter the status quo, are mandatory preliminary injunctions, or afford the moving party all the relief it could recover at the conclusion of a full trial on the merits, the request for preliminary injunction must be even more closely scrutinized. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975-76 (10th Cir. 2004). In such cases, the granting of the injunction is viewed as extraordinary, even in the normal course, and the moving party must make a strong showing with regard to the likelihood of success on the merits and the balance of harms. *Id.* Mandatory injunctions are those injunctions that "affirmatively require the nonmovant to act in a particular way, and as a result they place the issuing court in a position where it may have to provide ongoing supervision to assure that the nonmovant is abiding by the injunction." *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1099 (10th Cir.1991).

It is difficult to envision a more obvious example of mandatory injunctive relief than what is being proposed by HRDC in this case. The Motion seeks to compel GEO to disregard its contractual obligation to follow NMCD's policies and procedures, to compel NMCD to completely

5

overhaul its policies and procedures for screening and processing inmate mail and to install the Court as the monitor of the mail that is delivered to not only the Level III inmates housed at LCCF, but to inmates at each of NMCD's ten adult prisons. HRDC must, accordingly, make a heightened showing to succeed on its Motion. As discussed further below, however, HRDC's Motion fails to demonstrate that any of the four criteria for preliminary injunctive relief weighs in its favor and certainly fails to satisfy the additional burden imposed by its request for relief that amounts to a mandatory injunction. HRDC's Motion must be denied.

### III. HRDC Is Not Entitled to Preliminary Injunctive Relief

#### A. HRDC Is Not Likely to Succeed on the Merits of its Claims Against GEO.

HRDC brings claims against GEO pursuant to 42 U.S.C. § 1983 for violations of its right to free speech under the First Amendment and violations of its right to due process under the Fourteenth Amendment. (Complaint [doc. 1] at pp. 23-25). HRDC is unlikely to succeed on either of its claims against GEO.

There is, of course, no *respondeat superior* liability under section 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). To prevail on a section 1983 claim against a municipality, a plaintiff must prove (1) an employee of the municipality violated its constitutional rights; and (2) a policy or custom of the municipality was the moving force behind the alleged violation of its constitutional rights. *Id.* at 694-95. The two-pronged showing required of municipalities in *Monell* and its progeny applies with equal force to private corporations performing governmental functions, like GEO. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003)(collecting cases, quoting *Monell*, and holding "[t]herefore, a private actor 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words ... cannot be held liable under § 1983 on a *respondeat superior* theory'"); *Smedley v. Corrections Corp. of Amer.*, 175 Fed. App'x 943 (10th

Cir. 2005); *Herrera v. Santa Fe Pub. Sch.*, 41 F. Supp. 3d 1027, 1179 (D.N.M. 2014)("it is clear under Tenth Circuit law, and has been for decades, that *Monell's* rule against vicarious liability applies to private corporations").

HRDC plainly cannot prevail on its section 1983 claims against GEO because no policy or custom *of GEO* was the moving force behind the alleged violation of its constitutional rights. *Monell* requires factual allegations to show not only that a policy was in place, but that "a specific policy or custom was the moving force behind the alleged violation," *Dalcour v. City of Lakewood,* 492 Fed.Appx. 924, 930 (10th Cir.2012)(unpublished)(citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). A policy must be a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers." *Lankford v. City of Hobart,* 73 F.3d 283, 286 (10th Cir.1996) (citations omitted).

The policies identified in the Complaint and Motion for Preliminary Injunction were not "adopted and promulgated" by GEO's officers; rather, they were adopted and promulgated by NMCD. GEO does not have discretion to deviate from NMCD's policies and is, instead, legally bound to carry them out. (Ex. A). In other words, NMCD mandates the procedures, and GEO must carry out NMCD's mandate. *Monell* claims cannot be sustained when the entity against which relief is sought is not the policy-making body but is, instead, merely implementing a mandate received from another entity. *Whitesel v. Sengenberger*, 222 F.3d 861, 871-72 (10th Cir. 2000)(County pretrial service officers acted pursuant to policy formulated by First Judicial District of Colorado, not pursuant to policy created by County's Board of Commissioners; *Monell* claim against Board failed because "the Board cannot be liable for merely implementing a policy created by the state judiciary."); *Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008)(subordinate entity that implements/honors a mandatory directive from another entity cannot be liable under

*Monell*); *N.N. v. Madison Metropolitan School District*, 670 F.Supp.2d 927, 932 -941 (W.D. Wis. 2009)(collecting cases)(a municipality cannot be held liable [under *Monell*] for efforts to implement a state mandate when the plaintiff cannot point to a separate policy choice made by the municipality, because the alleged constitutional injury stems from another entity's policy, not anything devised or adopted by the municipality); *Boulden v. Roark*, 2024 WL 4135937, at *7 (D.N.M. Sept. 10, 2024), *report and recommendation adopted in relevant part,* 2024 WL 4344926 (D.N.M. Sept. 30, 2024) (granting summary judgment to GEO in part because the plaintiff did not identify any policy or custom of GEO - as opposed to NMCD – that violated his rights).

Absent evidence that a policy *of GEO* was the moving force behind the alleged violation of HRDC's constitutional rights, HRDC's section 1983 claims against GEO cannot be sustained and are subject to dismissal under Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 56. For purposes of the instant Motion, then, HRDC cannot carry its burden of making a clear showing of a likelihood of success on the merits of its claims against GEO.

Although not required, it is also apparent that HRDC has not made a clear showing that any employee of GEO violated its rights under the First or Fourteenth Amendment. On average, LCCF houses an inmate population in excess of 1000 prisoners. (Ex. A). Unlike state-operated facilities, mail sent to inmates at LCCF is not sent to an off-site vendor for screening prior to delivery. (Ex. D, Affidavit of Mailroom Supervisor Nancy Hill). Instead, the mail is delivered directly to the post office in Hobbs. (*Id.*). Each day, employees of GEO go to the post office in person to collect the mail. (*Id.*). Typically, the facility receives more mail on Mondays than on other days of the week. (*Id.*). However, it is not an exaggeration to say that the facility receives hundreds of pieces of mail addressed to LCCF inmates during an average week. (*Id.*).

Upon returning to the facility, the mail is taken to the mailroom for sorting and processing. (*Id*.). Legal mail is separated and logged. (*Id*.). Newspapers and magazines are separated and logged. (*Id*.). Packages (meaning any materials that arrive in bubble wrap, boxes or obviously contain something other than papers) are separated, logged and held for screening by the Security Threat Investigations Unit ("STIU"). (*Id*.). Regarding the remaining "regular mail," mailroom staff look up the inmate number and, if the recipient cannot be located by number, the name of the inmate on the address label to ensure he is still housed at the facility and to identify his housing unit so that the items can be made ready for screening and, ultimately, delivery in-house. (*Id*.).

The Prison Legal News ("PLN") publication is regarded as bulk mail, not a newspaper or magazine so it is not logged when it is received at LCCF. (*Id*.). However, PLN is allowed at LCCF and is delivered promptly to the addressee upon receipt. (*Id*.). The publication is also available for review in the facility's Education Resource Center. (*Id*.). Thus, any instance of alleged censorship of the PLN publication by mailroom staff at LCCF is anecdotal at best. (*Id*.).

Moreover, the specific instances of censorship identified by HRDC cannot be regarded as such. HRDC alleges GEO's employees censored issues of PLN that were mailed to inmate Marcos Aragon on January 9, 2024, March 19, 2024 (two instances) and May 6, 2024. (*See* Wright Declaration [doc. 3-2] at p. 26). However, inmate Marcos Aragon has not been housed at LCCF since August 29, 2023. (*See* Ex. A; Ex. E, Location History). When the publications in question were supposedly censored by GEO personnel at LCCF, Aragon was actually housed at Southern New Mexico Correctional Facility, which is not operated by GEO. (*Id*.). HRDC does not regard the return of mail to inmates who are not housed at a facility as an instance of censorship. (*See* Wright Declaration [doc. 3-2] at p. 7).

HRDC alleges GEO's employees censored an issue of PLN that was mailed to inmate "Frank Dombros" on March 19, 2024. (*See* Wright Declaration [doc. 3-2] at p. 26). However, no inmate named "Frank Dombros" has ever been housed at LCCF; an inmate named Frank Dombos is housed at LCCF. (Ex. A). As HRDC has not attached the mailing label for this supposedly "censored" publication, GEO cannot discern why it was returned. It is possible the address label provided an incorrect inmate number. (*Id*.). It is also possible that during the sorting process, the staff member who looked up the name "Dombros" in the electronic system found no such inmate or determined the name and number did not coincide and marked the publication for return. (*Id*.). If HRDC misspelled the inmate's name, as it appears, HRDC cannot claim GEO's employee violated its constitutional rights when it failed to correct HRDC's error by tracking down the intended recipient. As in the case of a newsletter mailed to an inmate who is no longer housed at LCCF, HRDC cannot regard the return of an inaccurately addressed newsletter as an instance of censorship. (*See* Wright Declaration [doc. 3-2] at p. 7).

HRDC also contends GEO engaged in eight acts of censorship when it refused copies of a book entitled "Protecting Your Health and Safety" that were sent by HRDC to inmates Richard Griego, Luis Coberrubia, Peter Duran, Scott Foster, Jesus Cartagena, Kevin Ogden, Glenn Gumbrecht, and Joe Chavez at LCCF in August 2024. (*See* Wright Declaration [doc. 3-2] at p. 26). Pursuant to mailroom practices, the packages were collected for screening by STIU. The books were large (more than 300 pages) and were sent without any purchase order or other indicia of a request having been made by the inmate. The sender of the book was listed on the address label as "Paul Wright, PLN Publishing." However, HRDC does not publish this book; rather, it appears the book was published by Southern Poverty Law Conference and that HRDC merely distributes it. (Affidavit of Paul Wright [doc. 3-2] at ¶ 7). Upon information and belief, officers in STIU

10

inspected the packages, determined the materials were not allowed by NMCD policy, wrote "refused" on the packages and returned them to the post office to be returned to sender.

GEO anticipates NMCD will demonstrate its policy required prison officials to reject a 300-page book published by a third party that was sent to inmates in a Level III correctional facility who did not solicit the publication. GEO further anticipates NMCD will demonstrate that its policy satisfies the *Turner* factors and does not give rise to any First Amendment violations. *See e.g., Prison Legal News v. County of Bernalillo*, 2015 WL 13662872, at *13 (D.N.M. Jun. 16, 2015) (county jail's rejection of Protecting Your Health and Safety books sent to detainees who did not request the book did not violate PLN's First Amendment rights given the security, fire safety and storage concerns elucidated by the policymaker, given PLN's option to supply a copy of its publication to the library at the jail, and given the showing made by the county as to the remaining *Turner* factors). Absent a showing that the rejection of the PYHS books violated HRDC's First Amendment rights, HRDC is not entitled to individual rejection notices. *Id*. Hence, HRDC cannot demonstrate any GEO employee violated its Fourteenth Amendment rights. For these reasons as well, HRDC cannot carry its burden of making a clear showing of a likelihood of success on the merits of its claims against GEO. This factor weighs against issuance of the injunction.

B. <u>HRDC Is Not Likely to Suffer Irreparable Harm</u>

The "showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *DTC Energy Grp., Inc. v. Hirschfeld,* 912 F.3d 1263, 1270 (10th Cir. 2018). "Demonstrating irreparable harm is not an easy burden to fulfill" as "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from *irreparable* injury that will *surely result* without [its] issuance" (emphasis added) (quotations omitted)). *Id*. HRDC's Motion fails to make this showing.

As discussed above, HRDC cannot prevail on the merits of its First or Fourteenth Amendment claims against GEO. Thus, its claims of irreparable harm are dubious. Moreover, HRDC claims it has been subjected to censorship "[f]rom at least March 2022 to the present." (Complaint [doc. 1] at ¶ 38). However, HRDC did not file the instant lawsuit until October 25, 2024, a delay of well over two years. (See generally, id.). "As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury." *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543-44 (10th Cir. 1994).

Additionally, HRDC's court filings establish that it has notice of NMCD's policy and how it is applied. Thus, it will not be harmed if a facility fails to send it a notification following a rejected mailing from HRDC in the future. *HRDC v. Bd. of Cty. Comm'rs of Strafford Cty*, 654 F.Supp.3d 85, 102-03 (D.N.H. 2023) (denying HRDC's motion for preliminary injunction in part because of its failure to show irreparable harm given that HRDC plainly had notice of offending policy).

HRDC argues that if the injunction does not issue, it will be irreparably harmed in its ability to bring its message to the inmate population. However, HRDC admits in its Motion that it has sent thousands of pieces of correspondence to inmates in NMCD custody, yet only a fraction of those mailings have been disrupted. HRDC has identified only thirteen (13) instances of alleged censorship of its publication at a GEO-operated facility during a thirty-three-month period of time. Considering LCCF maintains an inmate census in excess of 1000 prisoners and handles hundreds of pieces of mail each week, any alleged injury is not illustrative of irreparable harm. Moreover, the PLN publication is readily accessible to inmates in the facility's Education Resource Center. Although the PYHS book is not currently available to inmates in the library at LCCF, HRDC has made no showing that it has provided a copy to the facility for inclusion in the library or that

HRDC has made a request for its inclusion. HRDC cannot complain that its ability to bring its message to prisoners through the PYHS book is being irreparably restricted while not exploring other options to make its message available to them.

HRDC cannot carry its burden of making a clear showing of irreparable harm. This factor weighs against issuance of the injunction.

C. The Balance of Equities Does Not Tip in HRDC's Favor.

GEO cannot facilitate the relief requested in HRDC's Motion, to wit a complete overhaul of NMCD's mail policy. Control over the publications, correspondence and other materials that are permissible at LCCF lies within the exclusive control of NMCD. In essence, HRDC is asking the Court to direct NMCD to create and distribute a new mail policy. In addition to the time expended in drafting a new policy, Defendants would also have to expend time to train their staff in administering the new policy and, potentially, hire additional staff to accomplish these tasks. Given the lack of evidence of any on-going censorship of HRDC's publications at LCCF, this factor weighs against issuance of a preliminary injunction.

D. The Injunction Is Not In the Public Interest.

While acknowledging HRDC's important First and Fourteenth Amendment rights, issuance of the proposed injunction would nevertheless be contrary to the public interest. The requested injunction would bypass the system established by NMCD to manage inmate mail, ignore the important role of prison officials in balancing facility security against free speech, impede GEO's ability to process mail, usurp the judgment of corrections professionals with intimate knowledge of the proliferation of contraband into its prisons and impose a burden upon this Court to oversee the dissemination of mail to thousands of prisoners across the state. While the requested injunction may serve HRDC's own interests it does not explain why such a drastic,

court-mandated change at this juncture would serve the *public* interest or justify deviation from the "substantial deference" that must be accorded to the professional judgment of prison officials as they seek to keep their prisoners safe and their prisons secure. *Antonetti v. Gay*, 2023 WL 4551843, at *5 (D.N.M. June 2, 2023), *report and recommendation adopted*, 2023 WL 4547834 (D.N.M. July 14, 2023) (refusing to enjoin NMCD from enforcing mail policy).

## IV. Conclusion

HRDC has failed to make the strong showing required to support the issuance of preliminary injunctive relief against GEO. There is scant evidentiary support for the suggestion that HRDC is likely to prevail on its claims against GEO, or that it is likely to suffer irreparable harm if the injunction does not issue. All criteria for issuance of a preliminary injunction weigh in favor of denying the requested relief. The Motion for Preliminary Injunction should be denied.

WHEREFORE, Defendant The GEO Group, Inc. respectfully requests that the Court enter an Order denying HRDC's Motion for Preliminary Injunction, and awarding any such other and further relief as the Court deems just and proper.

Respectfully submitted,

YLAW, P.C.

***Michael S. Jahner***
Michael S. Jahner
*Attorneys for Defendants The GEO Group, Inc.*
4908 Alameda Blvd., NE
Albuquerque, NM  87113
(505) 266-3995
(505) 268-6694 (fax)
mjahner@ylawfirm.com

**I HEREBY CERTIFY** that on the 12th day of December, 2024, I caused the foregoing to be filed through the CM/ECF filing system, which caused the following parties to be served electronically:

Adam C. Flores
Ives & Flores, P.A.
925 Luna Circle, NW
Albuquerque, NM  87102
(505) 364-3858
adam@nmcivilrights.com

Marc J. Shinn-Krantz
Ernest Galvan
Rosen Bien Galvan & Grunfeld, LLP
101 Mission Street, Sixth Floor
San Francisco, CA  94105
(415) 433-7104
mshinn-krantz@rbgg.com
egalvan@rbgg.com

Jonthan P. Picard
Human Rights Defense Center
P.O. Box 1151
Lake Worth, Florida  33460
(561) 360-2523
jpicard@humanrightsdefensecenter.org

*Attorneys for Plaintiff*

*/s/ Michael S. Jahner*
Michael S. Jahner