IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO


**HUMAN RIGHTS DEFENSE CENTER,**

          **Plaintiff,**

**v.**                                   **1:24-cv-01091-SMD-KRS**

**MICHELLE LUJAN GRISHAM,**
individually and in her capacity as Governor of
the State of New Mexico; **ALISHA TAFOYA LUCERO,**
individually and in her capacity as
Cabinet Secretary of the New Mexico
Corrections Department; **MELANIE
MARTINEZ,** individually and in her capacity
as Deputy Secretary of the New Mexico
Corrections Department; **GARY MACIEL,**
individually and in his capacity as Deputy
Secretary of the New Mexico Correction
Department; **BRIAN R. EVANS**, individually
and in his capacity as Chief Executive Officer
of The GEO Group, Inc.; **WAYNE H.
CALABRESE,**  individually and in his capacity
as President and Chief Operating Officer of The
GEO Group, Inc.; **THE GEO GROUP, INC.
d/b/a LEA COUNTY CORRECTIONAL
FACILITY,** a corporation**; JOHN AND JANE
DOES 1-20,** individually and in their official
capacities; and **ENTITIES 1-10,**

          **Defendants.**

## <u>DEFENDANT'S REPLY IN SUPPORT OF HER MOTION TO DISMISS</u>

Plaintiffs' response confirms the Motion should be granted. Plaintiffs claim that the

Complaint "includes specific allegations about the Governor's involvement beyond a general

supervisory duty, including allegations of the Governor's personal involvement including that she

is the moving force behind [the challenged policy]," and "goes into great detail to describe the

specific written policies that all of the Defendants, including the Governor and her subordinates,

are responsible for maintaining and alleges how those policies are unconstitutional." Response at

4, 8. These assertions are belied by the Complaint itself.[1] While there may be other allegations broadly mentioning "Defendants," this is insufficient to state a § 1983 claim against the Governor. In addressing a similar situation, the Tenth Circuit explained:

> It is not enough for the Complaint to lump the four named defendants and presumably the 1–50 John Does into the collective term "Defendants" and allege that they directed Mr. Brown to register and serve probation as a sex offender. The need for individualized allegations is especially important where, as here, each of the defendants had different powers and duties, but the Complaint fails to identify specific actions taken by particular defendants that could form the basis of a constitutional violation.

*Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (cleaned up); *see also Haddock v. Newsom*, 2024 WL 3008858, at *4–5 (C.D. Cal. May 3, 2024) ("[A] complaint may not attribute liability to a group of defendants, but must set forth specific facts as to each individual defendant's deprivation of his rights. . . . This is because section 1983 requires a showing of personal participation in the alleged rights deprivation. Under § 1983, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." (cleaned up)); *Thomas v. Creuzot*, 2022 WL 19001972, at *6 (N.D. Tex. Dec. 29, 2022), *report and recommendation adopted*, 2023 WL 1433910 (N.D. Tex. Jan. 31, 2023) ("[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant. And a complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct." (cleaned up)); *Pearson v. Michigan Dep't of Corr.*, 2020 WL 5291974, at *3 (E.D. Mich. Sept. 4, 2020) ("The Court agrees

---

[1] Plaintiffs misleadingly paraphrase the Complaint at length to insert specific allegations that are not actually in the Complaint. *See* Response at 5-6. The Court should not be led astray by this legerdemain and focus on the language of the Complaint itself. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a rule 12(b)(6) motion tests the sufficiency of the allegations *within the four corners of the complaint* after taking those allegations as true." (emphasis added)).

with Defendants: by lumping all Defendants together, Plaintiffs fail to put anyone on notice of the nature of the claims asserted against them specifically. Defendants can be held liable only on their own unconstitutional behavior."); *Pouyeh v. Bascom Palmer Eye Inst.*, 2013 WL 12177169, at \*5 (S.D. Fla. Aug. 21, 2013) ("[I]n a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient to permit the defendants, or the Court, to ascertain exactly what a plaintiff is claiming.").

Thus, in order to ascertain whether Plaintiffs have properly stated a § 1983 claim against the Governor, the Court must look at the allegations specifically against the Governor. The Complaint only specifically mentions the Governor in two paragraphs of the complaint:

> 9.    Defendant MICHELLE LUJAN GRISHAM is the Governor of STATE OF NEW MEXICO and the Chief Executive of the state government. As Governor she is obligated under state law to supervise the official conduct of all executive branch officers and to see that all offices are filled and their duties lawfully performed. Defendant LUJAN GRISHAM has the authority to appoint and remove the subordinate defendants named herein. Governor LUJAN GRISHAM retains the ultimate state authority over the management and operations of NMCD facilities. She is sued in her individual and official capacities.

> 30.    Not all of NMDC's written policies, procedures, or practices are available online. HRDC obtained a memorandum dated December 29, 2021, addressed to "Offender Families" from NMCD, with the subject line "Re: Inmate Mail Changes." The memorandum is not signed by any individual but is on NMCD letterhead bearing the names of Defendant LUJAN GRISHAM, Governor, and Defendant TAFOYA LUCERO, Cabinet Secretary.

Complaint at 4, 12.

This is clearly insufficient to state a claim under § 1983. Plaintiffs do not allege any specific facts suggesting that the Governor had *anything* to do with the issuance or administration of the challenged policy. The closest they come to this is pointing to her general authority to "appoint and remove each of the subordinate defendants named" and the fact that her name appears on the

3

Secretary's letterhead. *See* Response at 8. But the Governor's general duty to enforce the law and supervise the conduct of her cabinet secretaries is insufficient to impose liability on her under § 1983. *See Does v. Whitmer*, 69 F.4th 300, 308 (6th Cir. 2023) ("The only connection between the governors and the alleged injuries is the governors' generalized responsibility to enforce the law and their supervisory authority over the [state police]. That connection is too attenuated." (cleaned up)). And the (unremarkable) fact that the Secretary's letterhead (like the letterhead of every other cabinet-level secretary) contains the Governor's name does not indicate that the Governor had anything to do with the challenged policies. Holding otherwise would contravene the Supreme Court's clear direction that, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added); *see Hernandez v. Lujan Grisham*, 494 F. Supp. 3d 1044, 1116 (D.N.M. 2020) ("[T]he Tenth Circuit recognized that there must be 'an affirmative link . . . between the unconstitutional acts by their subordinates and their adoption of any plan or policy . . . showing their authorization or approval of such misconduct.'" (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1200-01 (10th Cir. 2010)).

Plaintiffs arguments to the contrary are unavailing. Plaintiffs first argue that the Motion is premised on a factual, as opposed to legal, dispute that cannot be resolved at the motion to dismiss stage. *See* Response at 2, 4. Not so. The Governor does not dispute any allegations contained in the complaint for purposes of the Motion. *See generally* Motion. Rather, the Governor asserts that, taking all the factual allegations in the complaint as true, Plaintiffs fail to state a proper § 1983 claim against her. This is a purely legal question the Court may (and should) address at this point. *See, e.g., Does*, 69 F.4th at 309 (finding that the district court properly dismissed the complaint for failure to state a claim against the Michigan governor under Rule 12(b)(6)).

Next, Plaintiffs claim that the caselaw is in their favor. Specifically, Plaintiffs argue that *Lewis v. New Mexico Dept. of Health*, 94 F. Supp. 2d 1217, (D.N.M. 2000), *aff'd*, 261 F.3d 970 (10th Cir. 2001), *Hernandez v. Lujan Grisham*, 499 F. Supp. 3d 1013 (D.N.M. 2020), *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024), and *Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016),[2] support their position because the courts in those cases rejected the governors' motions to dismiss. *See* Response at 7-11. While this is true, it is necessary to consider the facts of each of those cases.

In *Lewis*, the plaintiffs claimed that the defendants, including former Governor Gary Johnson, failed to provide people with disabilities with the Medicaid waiver programs to which they are entitled. *See* 94 F. Supp. 2d at 1222. The court noted that the plaintiffs "allege[d] that Governor Johnson vetoed funds for the DD waiver program, directed [the director of the New Mexico Department of Health] not to submit department budgets for increased funds, and submitted a $2 million budget instead of the $5.5 million requested for the waiver programs." *Id.* at 1240. The court found that these allegations demonstrated that former Governor Johnson "has taken specific acts which have led to them being denied waiver services with reasonable promptness," and therefore were sufficient to maintain a § 1983 claim against him. *Id.*

In *Hernandez*, the plaintiffs sued the Governor and the Secretary of the Public Education Department, challenging the Department's re-entry plan delaying in-person learning during the

---

[2] Plaintiffs also cite *Petrella v. Brownback*, 697 F.3d 1285 (10th Cir. 2012), and *Savage v. Fallin*, 663 Fed. Appx. 588, 591 (10th Cir. 2016), *Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010), and *Coleman v. Newsom*, 2024 WL 3166333 (E.D. Cal. June 25, 2024). *See* Response at 9-10. However, the governors in those cases never argued that they could not be sued under § 1983 under a theory of respondeat superior. *See Petrella*, 697 F.3d 1285; *Savage*, 663 Fed. Appx. at 591; *Prison Legal News*, 608 F.3d 446; *Coleman*, 2024 WL 3166333. Accordingly, they do not help Plaintiffs. *See Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1231 (10th Cir. 2004) ("Cases are not authority for propositions not considered." (cleaned up)).

COVID-19 pandemic. *See* 499 F. Supp. 3d at 1056. The complaint specifically alleged that "the Governor of New Mexico . . . issued a school reentry plan that delayed the return of in-person schooling for the children of 8 of the 33 Counties in New Mexico." *Id.* And the Court took judicial notice of a press release containing a statement from the Governor demonstrating that she was involved in the decision to delay in-person learning. *Id.* at 1056 n.19. Given this, and given the Governor's authority to direct her cabinet, the court found it was "plausible . . . that Governor [Lujan] Grisham and [the Department Secretary] work together on creating, implementing, and enforcing the [challenged re-entry plan]" and therefore, the plaintiffs properly stated a claim against her. *Id.*

In *Fowler*, a group of transgender individuals sued the governor of Oklahoma and other state officials for their practice of denying sex-designation amendments on birth certificates. 104 F.4th at 775. The Tenth Circuit noted that the plaintiffs alleged that the governor issued an executive order setting the challenged policy in motion and that the state department of health invoked the order when denying the plaintiffs' applications for amended birth certificates. *Id.* at 783. Thus, the court held, the plaintiffs alleged "more than a general duty to enforce the law" and properly sued the governor. *Id.*

In *Peatross*, the estate of an individual shot by Memphis Police Department officers sued the director of the department. 818 F.3d at 236. In determining whether the director was entitled to qualified immunity, the court noted that the plaintiffs alleged that he "failed to train and supervise the officers to avoid the use of excessive force, failed to investigate the allegations of excessive force properly, and attempted to cover-up the unconstitutional conduct of his subordinates by exonerating the officers in an effort to escape liability." *Id.* at 243. The plaintiffs further alleged that the director "acknowledged a dire need to review and improve the police

department's operations[,]" and "noted that the [department] needed to improve its disciplinary process" but failed to make any improvements. *Id.* The court found that these allegations were sufficient to show that the director "at least knowingly acquiesced in the unconstitutional conduct" by the officers. *Id.*

Here, in stark contrast to *Lewis*, *Hernandez*, *Fowler*, and *Peatross*, Plaintiffs do not allege the Governor took *a single act* related to the challenged policies here. *See generally* Complaint. Rather, this case is more like *Does*, 69 F.4th 300.[3] There, several sex offenders filed suit against two Michigan governors and other state defendants, claiming that they continued to enforce provisions of Michigan's Sex Offender Registration Act against them even after federal courts declared those provisions unconstitutional. *Id.* at 303. The Sixth Circuit found that the district court properly dismissed the governors because the "only connection between the governors and the alleged injuries is the governors' generalized responsibility to enforce the law and their supervisory authority over the [state police.]" *Id.* at 308. In so holding, the court rejected the plaintiffs' arguments that the governors "should have issued an 'executive order, policy directive, or other communication' instructing the [state police] not to enforce [the Sex Offender Registration Act]"

---

[3] Plaintiffs attempt to distinguish *Does* by claiming that it only dealt with claims for damages under § 1983. *See* Response at 11. This is of no moment, however, as courts apply the same standard to all remedies sought pursuant to § 1983—including official capacity claims for prospective relief. *See Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 34 (2010) (holding that the limitation on respondeat superior liability in *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), applies to § 1983 claims against for prospective relief as well as to claims for damages); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("We join several of our sister circuits in adopting the view that *Monell*'s bar on respondeat superior liability under § 1983 applies regardless of the category of relief sought.); *see generally Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (explaining that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Brown*, 662 F.3d at 1161 n.5 ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief").

because "those allegations . . . merely charge the governors with a failure to act, which is not enough." *Id.*

The Sixth Circuit's decision in *Does* is not an outlier either. Many courts have reached similar conclusions and dismissed governors for failure to allege a specific connection to the challenged action. *See, e.g., Caldwell v. Beard*, 305 Fed. Appx. 1, 4 (3d Cir. 2008); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989); *Dutro v. Ritter*, 2009 WL 3698099, at *1 (D. Colo. Nov. 4, 2009); *Wheeler v. North Dakota*, 2019 WL 11662579, at *5 (D.N.D. July 26, 2019), *report and recommendation adopted,* 2019 WL 11663796 (D.N.D. Aug. 23, 2019), *aff'd,* 2019 WL 11662559 (8th Cir. Dec. 10, 2019); *J.P. v. Taft*, 2006 WL 1071864, at *3 (S.D. Ohio Apr. 21, 2006); *Brzozowski v. Pennsylvania Tpk. Comm'n*, 165 F. Supp. 3d 251, 266 (E.D. Pa. 2016), *aff'd as modified, Brzozowski v. Pennsylvania Tpk. Comm'n*, 738 Fed. Appx. 731 (3d Cir. 2018).

In sum, Plaintiffs give this Court no reason not to dismiss the Governor. Accordingly, the Court should grant the Motion. And the Court should reject Plaintiffs half-hearted request to amend their Complaint. If Plaintiffs truly wish to amend their complaint, they should file a motion to amend along with a copy of the proposed amended complaint so the Governor can have the opportunity to address whether any such amendment is futile. *See* D.N.M. LR-Civ. 15.1 ("A proposed amendment to a pleading must accompany the motion to amend."); *Walters v. Eddy Cnty. Det. Facility*, 2011 WL 13291148, at *1 (D.N.M. Aug. 4, 2011) ("Without a proposed amended complaint, the Court has no means of ascertaining whether the amended complaint will address the factual deficiencies identified in the Magistrate Judge's proposed findings.").

Respectfully submitted,

**CARRILLO LAW FIRM, P.C.**

*/s/ Raúl A. Carrillo, Jr.*
Raúl A. Carrillo, Jr., Bar No. 5600
P.O. Box 457
Las Cruces, NM 88004
(575) 647-3200
(575) 647-1436 (fax)
raul@carrillolaw.org
*Attorneys for State Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on the 18th of April, 2025, a copy of the foregoing document was sent via the federal CM/ECF filing system to the following:

**ROSEN BIEN GALVAN & GRUNFELD, LLP**
Ernest Galvan, Cal Bar No. 196065
Marc. J. Shinn-Krantz, Cal. Bar No. 312968
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
(415) 433-6830
(415) 433-7104 (fax)

**HUMAN RIGHTS DEFENSE CENTER**
Jonathan P. Picard, Fla. Bar No. 105477
P.O. Box 1151
Lake Worth, Florida 33460
(561) 360-2523
(561) 828-8166 (fax)

**IVES & FLORES, P.A.**
Laura Schauer Ives, SB#12463
Adam C. Flores, SB #146686
925 Luna Circle NW
Albuquerque, NM 87102
(505) 364-3858
(505) 364-3050 (fax)

*/s/ Raúl A. Carrillo, Jr.*
Raúl A. Carrillo, Jr.

9