IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**HUMAN RIGHTS DEFENSE CENTER**,

    *Plaintiff,*

v.   No. 1:24-cv-1091-SMD-KRS

**MICHELLE LUJAN GRISHAM**, *individually and in her capacity as Governor of the State of New Mexico*; **ALISHA TAFOYA LUCERO**, *individually and in her capacity as Cabinet Secretary of the New Mexico Corrections Department*; **MELANIE MARTINEZ**, *individually and in her capacity as Deputy Secretary of the New Mexico Corrections Department*; **GARY MACIEL**, *individually and in his capacity as Deputy Secretary of the New Mexico Corrections Department*; **BRIAN R. EVANS**, *individually and in his capacity as Chief Executive Officer of The GEO Group, Inc.*; **WAYNE H. CALABRESE**, *individually and in his capacity as President and Chief Operating Officer of the GEO Group, Inc.*; **GEO GROUP, INC.**, *a corporation doing business as Lea County Correctional Facility*,

    *Defendants.*

## OPINION AND ORDER

    Currently before the Court are two opposed motions related to discovery (collectively "the Motions"). The first is a motion filed by Governor Michelle Lujan Grisham ("the Governor's Motion") (Doc. 63), seeking to stay discovery pending a ruling on her motion to dismiss filed on December 20, 2024 (Doc. 28), and fully briefed on April 21, 2025 (Doc. 60). The second is a motion filed by Defendants Alisha Tafoya Lucero, Melanie Martinez, and Gary Maciel, three officials of the New Mexico Corrections Department ("NMCD") ("the NMCD Officials' Motion") (Doc. 64), seeking a forty-five-day extension of the deadline to respond to discovery requests served by Plaintiff on May 22, 2025. For the reasons that follow, the Court (i) **DENIES** the

Motions; (2) sua sponte **GRANTS** Governor Grisham and the NMCD Officials an additional **fourteen days** from this Order to serve their responses to the outstanding discovery; and (3) sua sponte extends the amendment/joinder deadlines in the current Scheduling Order.

## Background

Plaintiff Human Rights Defense Center ("HRDC") is a non-profit organization involved in "public education, advocacy and outreach to incarcerated persons and the public about the economic and social costs of prisons to society." (Doc. 1 ¶ 8). Among other things, HRDC "help[s] incarcerated persons educate themselves about their constitutional and human rights and [ ] learn about accessing education while incarcerated. HRDC accomplishes its mission through advocacy, litigation, and publication and/or distribution of books, magazines and other information concerning prisons and the rights of incarcerated persons." (*Id.*).

HRDC initiated this action on October 25, 2024, alleging censorship of the publications and correspondence that it mails to people incarcerated with the NMCD without adequate notice or an opportunity for challenge the censorship. HRDC alleges that the complained of conduct violates its constitutional rights to freedom of speech and due process. It seeks redress for those violations in the form of injunctive relief, declaratory relief, and damages. The defendants named in the complaint include: (1) Governor Grisham and the NMCD Officials (collectively "the State Defendants"), all of whom are sued in their official and individual capacities; and (2) GEO Group, Inc., a private company retained by the NMCD to operate one of its correctional facilities, and two executive officers of that company, Brian Evans and Wayne Calabrese ("the GEO Group Executive Officers") (collectively "the GEO Group Defendants").

Simultaneous with filing the complaint, HRDC filed a motion for preliminary injunctive relief (Doc. 3). GEO Group, Inc. and the NMCD Officials filed answers to the complaint (Docs.

20, 27), while Governor Grisham and the GEO Group Executive Officers filed motions to dismiss (Docs. 28, 30). On February 12, 2025, the Court held a status conference to solicit the parties' opinions regarding whether to hold a Rule 16 scheduling conference so that discovery could proceed, or whether to instead wait until one or more of the pending motions were ruled on. *See* (Doc. 37). Counsel for HRDC and counsel for the State Defendants were in favor of proceeding with discovery, while counsel for the GEO Group Defendants expressed the opinion that discovery against his clients ought to be stayed pending resolution of the GEO Group Executive Officers' motion to dismiss. (*Id.*). After considering counsels' arguments, the Court decided that it would proceed with discovery as to all parties. *(Id.)*.

Accordingly, a Rule 16 scheduling conference was held on March 26, 2025 (Doc. 52), following which, the Court entered the present Scheduling Order (Doc. 54). Among other things, the Scheduling Order sets a July 31, 2025 deadline for HRDC to move to amend the pleadings or join additional parties, and a deadline to complete all fact discovery by January 30, 2026. On May 22, 2025, HRDC served the State Defendants with "Plaintiff's First Set of Request For Production of Documents To Defendants Michelle Lujan Grisham, Alisha TaFoya Lucero, Melanie Martinez, an Gary Maciel" (Doc. 66-1 at 8); and "Plaintiff's First Set Of Interrogatories To Defendant Alisha TaFoya Lucero" (Doc. 66-1 at 29) (collectively "Plaintiff's Discovery Requests"). *See* (Doc. 66-1 (Bien-Kahn Decl. ¶ 2, Ex. A)). The discovery in question includes twenty-four requests for production of documents, and sixteen interrogatories. (*Id.* (Bien-Kahn Decl. ¶¶ 3-4, Exs. B, C)).

Pursuant to the Scheduling Order, as well as Fed. R. Civ. Proc. 34(b)(2)(A), the State Defendants' responses to Plaintiff's Discovery Requests were due thirty days after service, or on or before Monday, June 23, 2025. *See* (Doc. 54 at 1-2). On Friday, June 20, 2025, at 11:40 a.m., counsel for the State Defendants sent an email to counsel for HRDC, attaching draft copies of the

3

Governor's Motion and the NMCD Officials' Motion, and asking whether HRDC concurred in, or opposed the Motions. *See* (Doc. 66-1 at 48). The email stated that if a response was not received by the end of the day, the State Defendants would "assume the motions were opposed and file them accordingly." (*Id.*). Counsel for HRDC responded by email sent at 12:18 p.m., stating without elaboration: "We will oppose." (*Id.*). The State Defendants then filed the Motions later that afternoon.

Given that the NMCD Officials' Motion was filed one business day before those Defendants' discovery responses were due, the Court entered an order to make clear that the response deadline for those Defendants would be stayed pending the Court's ruling on the Motion. *See* (Doc. 65). The Court also ordered HRDC to file its brief in opposition to the NMCD Officials' Motion by July 1, 2025. (*Id.*). HRDC filed its opposition to the NMCD Officials' Motion on the expedited July 1 date, *see* (Doc. 66), and then filed its brief in opposition to Governor Grisham's Motion two days later, on July 3, 2025, *see* (Doc. 67). The NMCD Officials filed a reply in support of their motion on July 15, 2025 (Doc. 70), and the Governor filed a reply in support of her motion on July 17, 2025 (Doc. 713). The Motions thus are now ripe for ruling.

## Discussion

### A.   Governor Grisham's Motion To Stay Discovery

The approach this Court must follow in evaluating motions to stay discovery is generally as follows:

> Under the Civil Justice Reform Act and the Federal Rules of Civil Procedure, the Court must attempt to secure the "just, speedy, and inexpensive" resolution of every civil case before it. 28 U.S.C. § 471; Fed. R. Civ. P. 1. This standard requires the Court, in the course of ensuring a just outcome, to both (1) expedite the ultimate disposition of litigation and (2) reduce its costs. Discovery stays generally impede the first goal but may, depending on the circumstances, serve the second. As such, the decision whether to

4

> stay discovery "depends greatly on each case's facts and progress" and is within the Court's "broad discretion." *De Baca v. United States*, 403 F. Supp. 3d 1090, 1111-12 (D.N.M. 2019); *Martin v. City of Albuquerque*, 219 F. Supp. 3d 1081, 1089-90 (D.N.M. 2015).
>
> In deciding whether to stay discovery, courts must exercise sound judgment and "weigh competing interests." *De Baca*, 403 F. Supp. 3d at 1111; *Martin,* 219 F. Supp. 3d at 1090. In so doing, courts
>
>> may consider factors such as: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.
>
> *Mestas v. CHW Grp. Inc.*, No. CV 19-792 MV/CG, 2019 WL 5549913, at *1 (D.N.M. Oct. 28, 2019) (quotation marks and brackets omitted). Further, it may be appropriate for a court to stay discovery until a pending dispositive motion is decided where "the case is likely to be finally concluded as a result of the ruling thereon; where the facts sought through uncompleted discovery would not affect the resolution of the motion; or where discovery on all issues of the broad complaint would be wasteful and burdensome." *Wolf v. United States*, 157 F.R.D. 494, 495 (D. Kan. 1994).

*Valtierra v. Nyamsuren*, No. CV 24-899 DHU/JFR, 2025 WL 754169, at *3 (D.N.M. Mar. 10, 2025).

After reviewing the briefing and cited case law and carefully considering the parties' respective arguments, the Court concludes that the relevant factors weigh against staying discovery. The primary factor the Court relies on is the lack of any unnecessary burden to Governor Grisham if discovery proceeds. The Governor argues "that the potential complexity of discovery warrants imposition of a stay," but fails to demonstrate the discovery requests in question are actually burdensome. For instance, the Governor has not shown, or even asserted, that HRDC has served "an 'extraordinary number' of" [discovery requests]." *Minter v. City of Aurora*, No. 20-CV-02172-RM-NYW, 2021 WL 735910, at *6 (D. Colo. Feb. 25, 2021). The Governor merely asserts in a conclusory fashion that "the twenty-four (24) propounded Requests for Production …

5

include huge requests for documentation" (Doc. 63 at 3), and in her reply, she asserts that responding to the discovery would place an "extraordinary burden" on her (Doc. 73 at 4). But nowhere does she provide further facts or details to explain her conclusory characterization of the discovery requests as being extraordinarily burdensome. Indeed, if the requests in fact seek a "huge" number of documents and impose an extraordinary burden on the Governor, then they are also likely objectionable to some extent on overbreadth grounds. Accordingly, a non-objectionable, smaller subset of the requested documents may be all that the Governor would be required to produce.

In any event, the Governor has not shown that a stay of discovery against her would avoid the allegedly burdensome discovery at issue because, even if discovery were stayed as to Governor Grisham, the NMCD Officials will still be required to respond to Plaintiff's Discovery Requests. *See Minter v. City of Aurora,* No. 20-CV-02172-RM-NYW, 2021 WL 735910, at *5 (D. Colo. Feb. 25, 2021) (finding "that the invocation of qualified immunity by the Individual Defendants with regard to their federal claims, in and of itself, d[id] not warrant a stay of discovery," because the plaintiffs' claims against other defendants will "proceed through discovery notwithstanding the Individual Defendants' successful invocation of qualified immunity" and "the Individual Defendants—even if dismissed from this action—will still be subject to discovery obligations"); *Rome v. Romero*, 225 F.R.D. 640, 644 (D. Colo. 2004) (court notes that the discovery requests sought information that was "independently discoverable, notwithstanding a claim of qualified immunity" by the individual defendants who had moved for a stay).

The Governor responds to the argument that discovery will proceed against the NMCD Officials with the assertion in her reply that if her Motion were to be granted, the result would be to stay the NMDC Officials' obligation to respond to HRDC's First Set of Requests For Production

of Documents as well as the Governor's obligation to respond, supposedly because those requests are addressed to the Governor *and* the NMCD Officials jointly. *See* (Doc. 73 at 3).[1] That is not how the Court interprets the relief requested in the Governor's Motion. Despite a broadly worded (and somewhat ambiguous) request on the last page of the Motion for "the Court [to] stay discovery in this matter" (Doc. 63 at 3), the Governor's Motion clearly states that it is being brought by "Defendant Grisham" only. *See* (*id.* at 1). Since the Motion is brought by Governor Grisham only, and since the Motion says nothing about staying any discovery served on the NMDC Officials, the Court does not understand the Governor's assertion, made for the first time in her reply brief, that a stay in favor of discovery against the Governor would also operate in favor of the NMCD Officials, As set forth in the reply brief, the assertion is presented as more of an assumption than an argument. But why is the Governor entitled to assume that a stay of her response to the First Requests for Production of Documents automatically would relieve the NMCD Officials from their discovery obligation to respond to those discovery requests when they themselves have not moved for a stay of discovery? Moreover, if they had so moved, their motion would likely be denied because those defendants do not have a pending motion to dismiss. *See, e.g., Rome v. Romero*, 225 F.R.D. 640, 644 (D. Colo. 2004) ("[T]he Court notes that the motion is made on behalf of all of the Defendants, including the Denver Police Department and the City and County of Denver. These two entities are not permitted to assert a defense of qualified immunity, and, therefore, are not entitled to a stay of discovery on the claims against them."). Yet, as argued by the Governor, it is somehow (unexplained) so clear that the NMCD Officials would get to ride on the coattails of the Governor's stay that no further explanation is provided.

---

[1] The Governor clarifies that the stay would not apply to HRDC's First Set of Interrogatories because the Governor is not named as a responding party on those discovery requests.

The Governor does not dispute that the document requests at issue are relevant to HRDC's claims against not only her but the NMCD Officials. Nor does she contest that the documents called for by the requests are either in the NMCD Officials' possession or within their control, and therefore proper subjects for discovery requests directed at those defendants. *See* (Doc. 73 at 3 (asserting that it is "irrelevant" that the requested documents "are not only in the custody and control of Defendant Grisham")). Because Governor Grisham has failed to present any legal authority to support her assertion that a stay in her favor would operate automatically to stay the NMCD Officials' responses to the same discovery, the Court finds that is not the case, and those defendants do indeed need to respond to any discovery propounded on them, regardless of whether a co-defendant, i.e., the Governor, were granted a stay.[2]

As an added reason for finding against a stay of discovery until after a ruling on the Governor's motion to dismiss, the Court is not convinced that any discovery would ultimately be avoided in doing so, not only because the same discovery may be obtained from the NMCD Officials, but also because there is a good chance that a ruling in the Governor's favor on the motion to dismiss will not result in a dismissal of the Governor from this lawsuit. A stay pending the determination of a motion to dismiss is justified if the moving party might be "spared the burdens of discovery," but "[t]hese concerns are somewhat less pressing" where the argument for dismissal does not apply to all of the claims against the moving defendants. *Minter*, 2021 WL

---

[2] The Governor admits that "[i]f the Plaintiff were willing to reserve the Requests for Production on the State Defendants (excluding Defendant Grisham) the State Defendants would respond as required." (Doc. 73 at 3). That argument, however, actually supports the conclusion that the NMDC Officials' discovery responses would not be stayed by a stay in favor of the Governor. It would make no sense to require HRDC to engage in the formalistic process of re-serving the Requests for Production on the NMCD Officials solely to remove the Governor's name from those requests. In fact, the Governor's admission that all HRDC would need to do to avoid the stay as to the NMCD Officials would be to re-serve its requests suggests that the ultimate goal in filing the Motion to Stay was to obtain an extension of the response deadline indirectly by requiring HRDC to re-serve those requests, thereby starting the thirty-day response deadline anew.

735910, at *6. The undersigned does not wish to pre-judge how the presiding judge might rule on the Governor's motion to dismiss, but nevertheless has a duty to look to the underlying motion to dismiss in determining whether a stay of discovery is warranted.[3]

The Governor's sole argument for dismissal as set forth in her motion to dismiss appears to be that HRDC has failed to state a valid supervisory liability claim against her because the complaint does not plead any specific acts or omissions committed by the Governor that deprived HRDC of a constitutionally guaranteed right. (Doc. 28). Even if successful on that argument, however, the Governor's motion fails to address HRDC's official capacity claim against her for prospective injunctive relief, and whether that claim might proceed under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908). *See, e.g., Fowler v. Stitt,* 104 F.4th 770, 782, 783 (10th Cir. 2024) (stating that *Ex parte Young* allows suit "if the named state official has some connection with the enforcement of the challenged action," and finding that the plaintiffs had sufficiently alleged that the Governor "had more than a general duty to enforce the law" (internal quotation marks and citation omitted)), j*udgment vacated on other grounds*, No. 24-801, 2025 WL 1787695 (U.S. June 30, 2025)*; Petrella v. Brownback,* 697 F.3d 1285, 1293–94 (10th Cir. 2012) (rejecting argument that plaintiffs could not identify any specific action on defendants' part that harmed them, stating that "[i]t cannot seriously be disputed that the proper vehicle for challenging the constitutionality of a state statute, where only prospective, non-monetary relief is sought, is an action against the

---

[3] *See, e.g., Davis v. Nevada,* No. 3:13-CV-00559-MMD, 2014 WL 1308347, at *2 (D. Nev. Mar. 31, 2014) ("To determine if a stay is appropriate, the magistrate judge will typically take a 'preliminary peek' at the underlying motion to dismiss (or other dispositive motion)[,] … not … to predict the outcome of the motion, but rather to evaluate whether a stay is consistent with the goal of the Federal Rules of Civil Procedure of securing a just, speedy and inexpensive determination of the case." (quoting *Tradebay, LLC v. eBay, Inc*., 278 F.R.D. 597, 603 (D. Nev. 2011) (stating that "taking a 'preliminary peek' and evaluating a pending dispositive motion puts a magistrate judge in an awkward position" because "[t]he district judge will decide the dispositive motion and may have a different view of the merits of the underlying motion," but noting that the magistrate judge's "preliminary peek: at the merits is necessary "to evaluate the propriety of an order staying or limiting discovery with the goal of accomplishing the objectives of Rule 1")).

state officials responsible for the enforcement of that statute," and that "[n]or can it be disputed that the Governor and Attorney General of the state of Kansas have responsibility for the enforcement of the laws of the state");*Carter v. Indiana,* No. 2:21-CV-256-PPS-JPK, 2022 WL 16833590, at *14 & n.23 (N.D. Ind. Nov. 8, 2022) (rejecting argument that under no circumstances would the Governor be a proper state official to sue for injunctive relief under *Ex Parte Young*, and citing cases with varying results).[4] Accordingly, it appears that litigation of HRDC's claims will likely proceed *not only* as to the NMCD Officials, but also against Governor Grisham herself, *even if* Governor Grisham were to succeed on her motion to dismiss.

Finally, the Court would point out, as mentioned earlier in this Order, that Governor Grisham was given the opportunity prior to the Scheduling Order being entered to argue in favor of a stay of discovery based on her motion to dismiss filing. At that time, she took the position that discovery should proceed. Nothing has changed in the posture of the case since then that would justify taking the opposite position on the issue now. The Court also finds it troubling that Governor Grisham waited to file her Motion until just before her responses to HRDC's document production requests were due. At the very least, HRDC was entitled to have relied on the Governor's previous position expressed on the record some four months earlier that discovery

---

[4]*See also Wyatt v. Wilson*, No. CV 1:23-509, 2025 WL 539687, at *11 (M.D. Pa. Feb. 18, 2025) ("to the extent that Plaintiff is seeking prospective declaratory or injunctive relief relating to the sending of legal mail to him in Wyatt I & II, the Eleventh Amendment would not bar those claims against Blake and Adams in their official capacities."); *compare Ellington v. Miller,* 19 F.3d 26 (9th Cir. 1994) (dismissing individual capacity claims against a governor on the ground that "[a] supervisor cannot be held *personally* liable under § 1983 for the constitutional deprivations caused by his subordinates, absent his participation or direction in the deprivation" (emphasis added)); *Alex v. St. John the Baptist Par. Sheriff's Off.*, No. CV 16-17019, 2017 WL 1333546, at *1 (E.D. La. Apr. 11, 2017) (dismissing individual liability claims against the Governor based on rule against supervisory liability, and dismissing official capacity claims seeking *damages* against the Governor based on sovereign immunity); *Rutherford v. Louisiana*, No. CIV.A. 10-1987, 2011 WL 692031, at *3 (E.D. La. Feb. 17, 2011) (dismissing *official capacity* claims against Governor Jindal "because a § 1983 claim against a state official in his official capacity for monetary damages is actually a claim against the state itself, [and] such a claim is barred by the Eleventh Amendment"; and dismissing *personal capacity* claims against Governor Jindal because, "[s]upervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries").

should move forward notwithstanding the Governor's pending motion to dismiss. *See* (Doc. 67 at 4 (pointing out that the parties' "Joint Status Report and Provisional Discovery Plan includes no mention of the possibility that the State Defendants might seek to stay discovery during the pendency of Defendant Grisham's already-filed Motion to Dismiss")).[5] The Governor argues that HRDC cannot claim prejudice from further delay when it waited to serve the Governor with its discovery requests until May 22, 2025. The Scheduling Order, which initiated discovery, was not entered until March 26, 2025, however, so HRDC delayed only two months, not six months, as the Governor argues. *See* (Doc. 73 at 4). And the Court does not see why HRDC's two month delay in serving written discovery requests would constitute a waiver of an argument for prejudice from a stay of the responding party's obligation to respond to the discovery after it has been served.

In sum, the Court finds unpersuasive the Governor's argument that a "stay of discovery until the disposition of the outstanding motion to dismiss … would prevent the needless expenditure of public money and time required to respond to discovery requests in a matter in which Defendant Grisham should be dismissed." (Doc. 63 at 2). Instead, as HRDC argues in its response to the Governor's Motion, "the State Defendants' discovery obligations will not be affected by the resolution of Defendant Grisham's Motion to Dismiss," so that "denying her

---

[5] The Governor's change of heart one business day before her discovery responses were due is further exasperated by her filing of the Motion after only a perfunctory effort to comply with D.N.M. LR-Civ. 7-1(a)'s requirement that the movant determine the opposing party's position on a motion before filing it, and without satisfying the good faith conferral requirement of Fed. R. Civ. P. 26(c)(1), which "generally requires counsel to 'converse, confer, compare views, consult and deliberate'" in person or over the telephone. *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999) (citation omitted)); *see, e.g., Clardy v. Gilmore*, 773 F. App'x 958, 959 (9th Cir. 2019) (recognizing that a court's authority to stay discovery is found in Rule 26(c)(1)). The Court understands from the NMCD Officials' reply in support of their Motion that personal matters may have interfered with the ability of counsel for the State Defendants to effectively confer in the period leading up to the discovery response deadline, and that counsel needed to get the Motions filed before the deadline expired. (Doc. 70 at 2). In any event, the Court's ruling is not based on any failure to comply with the good faith conferral requirements in the federal and local rules. Still, the Court takes this opportunity to remind the parties of their obligation to conduct discovery in good faith, which includes meeting and conferring regarding discovery deadlines and the scheduling of depositions, as well as agreeing to reasonable requests for additional time to respond to written discovery and extensions of Scheduling Order deadlines.

request to stay all discovery in this matter will not burden her or them in any way, and will have no impact on the 'public purse.'" (Doc. 67 at 8). As a result, Governor Grisham's Motion "falls far short of demonstrating that [HRDC's] requests unduly burden [her]," and she has "established no particularized facts that demonstrate that [she] will suffer a clearly defined and serious harm associated with moving forward with discovery." *Minter*, 2021 WL 735910, at *8 (internal quotation marks and citations omitted).

### B. The NMCD Officials' Motion For An Extension Of The Discovery Response Deadline

The NMCD Officials' Motion seeks a forty-five-day extension of time to respond to Plaintiff's Discovery Requests. But the NMCD Officials' Motion is unpersuasive as it relies on conclusory assertions rather than well supported arguments. For instance, the NMCD Officials argue that HRDC's interrogatories require them to "identify broad groups of people from their 2,500 person staff (and from Defendant GEO Group's staff) who may have had various interactions with their correspondence and publications over an approximately four (4) year period of time." (Doc. 64 ¶ 3). But the NMCD Officials do not point to any specific interrogatory in support, instead citing "Plaintiff's Interrogatories …. generally" (*id.*). In similar conclusory fashion, the NMCD Officials assert that "the Defendant's [sic] Request for Production request potentially vast amounts of documentation and communications from across the NMCD prison system." (*Id.* ¶ 6). Again, this assertion is made without citing to any specific document production requests or other evidence to support the claim that vast amounts of documentation is called for. It is not the Court's responsibility to find support in the record for a party's arguments. "Instead, it is the 'advocate's job ... to make it easy for the court to rule in his client's favor." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). A party

who makes only "broad, conclusory statements" in support of his argument will generally be held to have waived the issue for failure to develop it. *See Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 880 & n. 9 (10th Cir. 1997). The Court agrees with HRDC that "[i]f the State Defendants believe particular discovery requests are overbroad or unduly burdensome, they may object to those requests, and the parties will then be required to meet and confer on whether and how to narrow the scope. But a generalized claim that [HRDC] seeks a lot of information through discovery does not establish good cause for [a 45-day] extension of time." (Doc. 66 at 6).[6]

      The NMCD Officials' Motion is also unpersuasive because they do not explain what, if any, efforts they have been made to prepare responses to Plaintiff's Discovery Requests since those requests were served on them almost eight weeks ago. Further, as previously discussed, if the NMCD Officials simply needed more time to respond to Plaintiff's Discovery Requests, they should have sought to negotiate an agreed extension from HRDC as soon as they realized that more time was needed, rather than presenting HRDC with an already drafted, take-it-or-leave-it extension Motion one business day before the due date. *See* (Doc. 66 at 2) ("The State Defendants did not ever ask whether Plaintiff would agree to an extension of time to respond to these discovery requests. Had they done so, Plaintiff would have agreed to a reasonable extension of time."). The NMCD Officials were obviously aware of the nature and extent of Plaintiff's Discovery Requests from the moment those were served on them, so their description of the requests as seeking a vast amount of information does not excuse their failure to confer with HRDC over an agreed extension.

---

[6] In fact, the NMDC Officials state in their reply that they "will object to a number of the[] requests on the grounds that they are overly broad and unduly burdensome as propounded." (Doc. 70 at 3). The NMDC Officials argue the objections will "further *add*[ ] to the time" they need to respond to the requests. (*Id.* (emphasis added)). But if they intend to object, then they will not be identifying and producing documents at that time, so the time needed to respond should actually be less than if they intended to produce all documents requested.

Nor does the NMCD Officials' counsel's "longstanding vacation plans to be out of the country" for eight days in June, *see* (Doc. 64 at 7), provide an excuse. The NMCD Officials knew of those vacation plans since well before Plaintiff's Discovery Requests were served on them. *See* (Doc. 41) (filed Feb. 27, 2025). If counsel's vacation plans explained the need for an extension, then one would have expected counsel to have raised the issue with HRDC at the outset, and attempted to negotiate an extension to accommodate those plans, which is not what happened. *See* (Doc. 66 at 7) ("[T]he discovery at issue was served prior to [counsel's] period of' 'non-availability,' and the response deadline is after the conclusion of that period. At no point did the State Defendants request an extension of time from Plaintiff on this or any other basis, even though the parties exchanged e-mails regarding discovery after these discovery requests were served.").[7]

Despite the Court's findings above, by filing their Motion the NMCD Defendants succeeded in obtaining some measure of an extension, as the Court stayed their response deadline pending a ruling on the Motion. *See* (Doc. 25). In contrast, Governor Grisham did not move for an extension of the response deadline, instead filing only the motion seeking a stay of discovery. Thus, Governor Grisham's discovery responses are currently overdue.[8] In short, Governor Grisham is in default on her discovery obligations regardless of the Court's ruling on her Motion,

---

[7] Once again, the Court acknowledges the personal circumstances set forth in the NMCD Officials' reply brief that likely explain the failure to seek an extension by consent prior to the last business day before the discovery responses were due. *See* note 5, *supra*. The Court would like to express its condolences to counsel for the loss of his father. The Court also appreciates counsel's acknowledgment in the reply brief that, but for those personal circumstances during the time period leading up to the response deadline, "calling to confer on the issue [of an extension] would have been appropriate." (Doc. 79 at 4).

[8] *See PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1095 n.4 (D. Nev. 2022) ("As no stay has ever been entered by the Court, the status quo is that Counter-Defendants have been required to participate in discovery all along." (citing, *e.g., Willemijn Houdstermaatschaapij BV v. Apollo Comput. Inc*., 707 F. Supp. 1429, 1441 (D. Del. 1989) ("Defendant's argument assumes that the moment it has filed a motion to stay discovery on the damages issue, it need no longer obey basic discovery rules. Defendant is in effect granting itself a stay of discovery. Simple logic teaches that defendant has put the presumption on the wrong side: unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all.")).

while the Court's denial of the NMCD Officials' Motion means that they have one day left to serve HRDC with their discovery responses.

So where does the Court go from here? The Court concludes that the most reasonable path forward is to deny the Motions but sua sponte grant the State Defendants an additional two weeks from the date this Order is entered to respond to Plaintiff's Discovery Requests. The end result is that the State Defendants will have in effect received an extension that is two days shy of the extension they asked for in the NMCD Officials' Motion. The prejudice HRDC asserts it will suffer if the NMCD Officials were to receive their requested extension has to do with the current July 31, 2025 deadline for HRDC to amend the pleadings and/or join new parties, and the lack of time to analyze the State Defendants' belated discovery responses and document production in advance of that deadline and scheduled depositions. *See* (Doc. 66 at 3). But this prejudice can be avoided by the Court simply extending HRDC's deadline to amend pleadings and join additional parties, as well as the State Defendants cooperating in rescheduling any depositions at HRDC's request to allow HRDC sufficient time to receive and review any pertinent documents prior to conducting the deposition in question.

**ACCORDINGLY,**

1. The Opposed Motion For Stay Of Discovery Pending Ruling On Motion To Dismiss Defendant Grisham **(Doc. 63)** is **DENIED**.

2. The Opposed Motion For Extension Of Time For Defendants Lucero, Martinez, and Maciel To Respond To Plaintiff's Discovery Requests **(Doc. 64)** is **DENIED**.

3. The Court sua sponte extends the deadline for the State Defendants to respond to Plaintiff's May 22, 2025 discovery requests (First Set of Interrogatories and First Set of Requests for Production of Documents) to **fourteen (14) days** from entry of this Order.

4.  The Court also sua sponte: **(a)** extends the deadline for Plaintiff to move to amend pleadings or join additional parties to **thirty (30) days** following the date on which the State Defendants provide their responses to Plaintiff's First Set of Interrogatories and First Set of Requests for Production of Documents and any discovery disputes regarding those responses are resolved;[9] and **(b)** extends the deadline for Defendants to move to amend pleadings or join additional parties to **fifteen (15) days** after expiration of Plaintiff's extended deadline to move to amend pleadings or join additional parties.

5.  The Court will continue to monitor the status of discovery, and sets a telephonic status conference for that purpose for September 24, 2025 at 9:30 a.m. The parties are directed to call the Court's WebEx teleconference line at (855) 244-8681, and enter Meeting Number 2300 989 9447#, to be connected to the proceedings.

**IT IS SO ORDERED, this 22nd day of July, 2025**.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

---

[9] The Court is open to further extending Plaintiff's amendment/joinder deadline, as well as other dates in the Scheduling Order such as the fact discovery deadline, upon a showing of good cause based on either new information that was not provided until after the applicable deadline expired through no fault on Plaintiff's part, or the need for additional discovery that has not yet taken place, again through no fault on Plaintiff's part, such as the unavailability of the State Defendants' counsel of record to litigate this matter as set forth in the Amended Notice of Non-Availability (Doc. 41).