# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**HUMAN RIGHTS DEFENSE CENTER,**

        Plaintiff,

**vs.**

**MICHELLE LUJAN GRISHAM**, individually and in her capacity as Governor of the State of New Mexico; **ALISHA TAFOYA LUCERO,** individually and in her capacity as Cabinet Secretary of the New Mexico Corrections Department; **MELANIE MARTINEZ,** individually and in her capacity as Deputy Secretary of the New Mexico Correction Department; **GARY MACIEL**, individually and in his capacity as Deputy Secretary of the New Mexico Correction Department; **BRIAN R. EVANS**, individually and in his capacity as Chief Executive Officer of The GEO Group, Inc.; **WAYNE H. CALABRESE**, individually and in his capacity as President and Chief Operating Officer of The GEO Group, Inc.; **THE GEO GROUP, INC. d/b/a LEA COUNTY CORRECTIONAL FACILITY**, a corporation; **SCOTT MARQUARDT,** individually and in his capacity as Chief Executive Officer of Management & Training Corporation; **DANIEL MARQUARDT**, individually and in his capacity as President of Management & Training Corporation**; MANAGEMENT & TRAINING CORPORATION d/b/a OTERO COUNTY PRISON FACILITY**, a corporation**; JOHN AND JANE DOES 1-20**, individually and in their official capacities; and **ENTITIES 1-10**,

        Defendants.

**No. 1:24-cv-01091-SMD-KRS**

## PLAINTIFF'S OPPOSED MOTION TO COMPEL STATE DEFENDANTS' DISCOVERY RESPONSES

Plaintiff Human Rights Defense Center ("Plaintiff" or "HRDC"), pursuant to

D.N.M. Civil Local Rules 26.6 and 37.1, and Federal Rule of Civil Procedure 37(a),

hereby moves this Court for an order compelling Defendant Alisha Tafoya Lucero to

provide complete answers to Plaintiff's First Set of Interrogatories and compelling

Defendants Michelle Lujan Grisham, Alisha Tafoya Lucero, Melanie Martinez, and Gary

Maciel (collectively, "State Defendants") to produce all documents responsive to

Plaintiff's First Set of Requests for Production of Documents ("RFPs") as outlined

below.  This Motion is based on the accompanying Memorandum of Points of

Authorities; the supporting Declaration of Brenda Muñoz ("Muñoz Decl.") and exhibits

filed herewith, the pleadings in the above-captioned matter, and any oral argument

permitted at any hearings on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff's Interrogatories and RFPs request information and documents directly

relevant to the issues raised by the First Amended Complaint (or "FAC"), ECF No. 76,

which alleges that Defendants are wrongfully censoring publications and correspondence

that HRDC mails to persons incarcerated with the New Mexico Corrections Department

("NMCD"), in violation of HRDC's First and Fourteenth Amendment constitutional

rights.  *Id.* ¶ 1.  The discovery requests seek, *inter alia*, all policies and procedures

governing the processing of incoming mail addressed to incarcerated persons at NMCD,

the identities of NMCD staff involved in censoring HRDC's materials, documents which

establish any penological or security interest the State Defendants claim to be promoted

by NMCD's mail policies, and contracts and agreements with third-party contractors. *See* Muñoz Decl., ¶ 2, Ex. A; ¶ 3, Ex. B.

In their Responses to Plaintiff's Interrogatories and RFPs, the State Defendants object to almost every single request, but provide little to no factual or legal support for their objections. *Id.*, ¶ 4, Ex. C; ¶ 5, Ex. D.  Plaintiff served sixteen (16) Interrogatories, and Defendant Lucero either provided incomplete answers or objected and provided no answers to seven (7) of them.  *See id.*, Ex. C.  And even though Plaintiff served twenty-four (24) RFPs, the State Defendants only produced one hundred and three (103) pages of documents total, responsive to just three (3) RFPs.  *Id.* ¶ 5.  The only documents produced are three of the four versions of NMCD's mail policy in effect during the relevant time period (all of which are publicly available), documents from one claim filed in Oregon Small Claims Court against NMCD, and a copy of a resolution by Lea County approving the extension of the agreement between Lea County and Defendant The GEO Group ("GEO") for the management and operation of the Lea County Correctional Facility ("LCCF") (but not the contract itself).  *Id.* ¶¶ 6-8.  Because their discovery responses are clearly deficient, Plaintiff asks this Court to compel the State Defendants to provide or supplement their answers to Plaintiff's Interrogatories and produce additional documents responsive to Plaintiff's RFPs, as outlined below.  The State Defendants oppose this motion.  *Id.* ¶ 19.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff served its Interrogatories (on Defendant Lucero) and RFPs (on all State Defendants) on May 22, 2025.  *See* Muñoz Decl., Ex. A; Ex. B.  Under the Federal Rules

of Civil Procedure, the State Defendants' responses were due thirty (30) days after service, on June 23, 2025. Fed R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A). On June 20, 2025, the State Defendants filed a Motion seeking a 45-day extension of time to respond to Plaintiff's discovery requests. ECF No. 64. On July 22, 2025, the Court issued an order denying the State Defendants' request for an extension. ECF No. 77. Because the deadline for the State Defendants to respond to Plaintiff's discovery requests had passed, the Court *sua sponte* granted them a fourteen (14) day-extension to respond from entry of its Order. *Id.* at 15.

The State Defendants served their Responses to Plaintiff's Interrogatories and RFPs on August 5, 2025. Muñoz Decl., Ex, C; Ex. D. Under D.N.M. Civil Local Rule 26.6, Plaintiff had until August 26, 2025 to bring any motion to compel under Civil Local Rule 37.1 and Federal Rule of Civil Procedure 37(a). Plaintiff diligently sent the State Defendants a meet and confer letter on August 9, 2025, describing which discovery responses were inadequate, and asked for counsel's availability for a meet and confer call the week of August 11, 2025. Muñoz Decl. ¶ 9, Ex. E; Ex. F. Counsel for the State Defendants stated that he was unavailable that week due in part to a previously-scheduled medical procedure. *Id.*, Ex. F. The parties met via Zoom on August 18, 2025. *Id.* ¶ 16. No compromise was reached on that call, as counsel for the State Defendants was not prepared to respond substantively to Plaintiff with respect to any of the disputes. *Id.* Counsel for the State Defendants stated that he expected to be able to respond with his positions in writing to Plaintiff's meet and confer letter by approximately August 22, 2025. *Id.* Based on this representation, and on counsel's good faith belief that the parties

could reach a compromise as to some of their disputes, Plaintiff filed an unopposed motion asking for a one-week extension to the deadline for filing a motion to compel under D.N.M. Civil Local Rule 26.6.  ECF No. 94.

The Court granted the extension request on August 22, 2025, which pushed the motion to compel deadline to September 2, 2025.  ECF No. 95.  However, counsel for the State Defendants did not send a response to Plaintiff's meet and confer letter on August 22, 2025, as promised.  Muñoz Decl. ¶ 17.  On August 25, 2025 (the next business day), counsel for the State Defendants asked Plaintiff to re-send the August 9 meet and confer letter, and noted that they were "indexing documents" and working to provide a response "as quickly as possible."  *Id.* ¶ 17, Ex. G.  Counsel for Plaintiff re-sent the letter and asked for a more specific timeframe for the response with the State Defendants' positions on the discovery disputes, and reminded them that Plaintiff needed at least a few days to review their responses before the September 2, 2025 motion to compel deadline.  *Id.*  No further information was provided as to when Plaintiff could expect a response.  *Id.*  On August 28, 2025, counsel for Plaintiff again asked for an update regarding when the State Defendants would respond to Plaintiff's meet and confer letter.  *Id.* ¶ 18, Ex. H.  Plaintiff's counsel has received no response to that email.  *Id.*

To date, the State Defendants have yet to provide a response to Plaintiff's meet and confer letter or produce additional documents, even though Plaintiff attempted in good faith to confer with the State Defendants to obtain the discovery at issue without court action, pursuant to Federal Rule of Civil Procedure 37(a)(1).  *Id.* ¶ 19.

## LEGAL STANDARD

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). Rule 37(a) authorizes a party to move to compel answers to interrogatories propounded under Rule 33(a)(1) or documents requested under Rule 34 but not produced. "At the motion to compel stage, the proponent of the motion bears the initial burden of showing that the information sought is relevant." *Fisher v. Walmart*, No. 1:23-CV-28 JB/KRS, 2025 WL 776607, at *1 (D.N.M. Mar. 11, 2025). "The party opposing discovery carries the burden of showing that the potential harm from discovery outweighs the relevance of the document sought." *Reilly v. Kmart Co.*, No. 11-CV-1089 WJ/SMV, 2013 WL 12330089, at *1 (D.N.M. May 20, 2013) (quoting *Salmeron v. Highlands Ford Sales, Inc.*, 220 F.R.D. 667, 670 (D.N.M. 2003)).

## ARGUMENT

I.   **THE STATE DEFENDANTS SHOULD BE COMPELLED TO PROVIDE COMPLETE RESPONSES AND PRODUCE ADDITIONAL DOCUMENTS RESPONSIVE TO PLAINTIFF'S INTERROGATORIES AND RFPS.**

A.   **Discovery Regarding NMCD Mail Policies and Procedures.**

1.   **NMCD Mail Policies and Procedures In Effect During the Relevant Time Period (RFP Nos. 1-3).**

Plaintiff requested in RFPs Nos. 1-3 copies of: (1) Each and every NMCD policy concerning incoming mail, notices and appeals given when NMCD refuses to deliver incoming mail, and the standards or criteria used to decide whether to deliver incoming mail at any level of review; (2) Each and every NMCD operations manual and/or policy and procedural manual; and (3) Each and every NMCD mail room post order, and any

other mail room policies at NMCD prisons.  Muñoz Decl., Ex. B at 9.

NMCD mail policies are at the heart of Plaintiff's constitutional claims, and the main cause of the harms Plaintiff alleges in the First Amended Complaint.  *See, e.g.*, FAC ¶ 1 ("Defendants have adopted and implemented mail policies, practices, and customs that unconstitutionally prohibit delivery of publications and correspondence mailed by Plaintiff to persons incarcerated at [NMCD], and that deny due process of law to senders…").  Plaintiff seeks all policies, procedures, and protocols that govern how NMCD handles incoming correspondence and publications in order to prove how implementation of these policies result in violations of Plaintiff's First and Fourteenth Amendment rights.  Plaintiff also must rebut any argument that the mail policies are permissible because they are "reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987*)*, which turns on four factors:

> (1) whether the regulation is rationally related to a legitimate and neutral government objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

*Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (citing *Turner*, 482 U.S. at 89-90).  The universe of NMCD mail policies and procedures in effect during the relevant time period, including any operations manuals, post orders, or similar procedures that provide further guidance as to how to determine whether mailings should be rejected, is important in order to conduct the *Turner* analysis.

In response to RFP No. 1, the State Defendants only produced copies of three

versions of NMCD's policy, "CD-151200 Correspondence Regulations" ("CD-151200"), and associated forms.  Muñoz Decl. ¶ 6.[1]  They did not produce the current version of CD-151200, last revised May 27, 2025.  *Id.*  They also did not produce a December 29, 2021 NMCD Memo to "Offender Families" regarding "Inmate Mail Changes," which describes changes to NMCD's mail policies that went into effect on or around February 1, 2022.  Declaration of Marc J. Shinn-Krantz in Support of Plaintiff's Motion for Preliminary Injunction ("Shinn-Krantz Decl."), ECF No. 3-1 ¶ 5 & Ex. A.  The Memo announced that "personal mail will no longer be accepted at state-run prison facilities," and set forth a procedure for sending personal mail to a third party company for "processing" for the eight adult facilities operated by NMCD.  *Id.*  The Memo states that "magazines will not be accepted" at any State-run facilities.  *Id.*

Shortly after this Memo was issued, HRDC's mailings to incarcerated persons at NMCD began to be censored.  ECF No. 3 at 6, 8-9.  Although the Memo purports to apply only to State-run prison facilities, Plaintiff has also had its publications censored by Defendants GEO and Management & Training Corporation ("MTC") at the prisons they operate for NMCD.  FAC  ¶¶ 42-45.  To the extent that other versions of this Memo exist, or other policies, procedures, post orders, or the like which concern the changes to NMCD's mail policies described in the Memo, Plaintiff is entitled them.

---

[1] In response to RFP No. 3, the State Defendants point Plaintiff to their document production for RFP No. 1.  Muñoz Decl., Ex. D at 11.   However, they did not produce any mail room post order or other mail room policies, and did not respond to Plaintiff's request that they answer whether additional responsive documents exist.  *Id.* ¶ 11.

The State Defendants object to RFP No. 2 as seeking information which is publicly available, and point Plaintiff to their website, https://www.cd.nm.gov/policies/. Muñoz Decl., Ex. D at 10.  This webpage links to NMCD policies and procedures, but includes no information about operations manual(s) and/or policy and procedure manual(s), which are typically internal reference documents for employees at large organizations and public entities.  *Id.* ¶ 10.  Plaintiff asked State Defendants to confirm whether they have produced all responsive documents in their possession, which they have not done.  *Id*.  Nor have they explained why it would be unduly burdensome or disproportional to the needs of the case to produce them.

> **2.     The Drafting, Formulation, and Implementation Process for NMCD Mail Policies and Procedures (Interrogatory Nos. 3 and 6, and RFP No. 4).**

Interrogatory Nos. 3 and 6 ask for the identities of NMCD staff that "proposed, drafted, edited, commented on, or otherwise participated in the creation" of each version of CD-151200 in effect during the relevant time period, as well as the changes to NMCD's mail policies described in the "Inmate Mail Changes" Memo.  Muñoz Decl., Ex. A at 8-9.  RFP No. 4 asks for "documents and communications concerning the formulation or implementation of each and every policy that is responsive to [RFP] No. 1." *Id.*, Ex. B at 9.  As explained above, *see* Section I.A.1, *supra*, NMCD's mail policies are highly relevant to Plaintiff's claims.  Plaintiff seeks the identities of potential defendants and/or witnesses regarding how NMCD's mail policies were developed, and what considerations went into the rules and restrictions on the delivery of mail.  Documents and communications concerning the formulation and implementation of these policies

will also reveal these considerations, and the potential penological interests the State

Defendants may claim are promoted by NMCD's mail policies under *Turner*.

Defendant Lucero objects to Interrogatory Nos. 3 and 6 on the ground that

proposals, edits, and prior versions of these mail policies are irrelevant to this litigation as

they were never enacted, and that identifying NMCD staff involved would be unduly

burdensome. Muñoz Decl., Ex. C at 6, 9. But previous versions and proposed edits of

NMCD's mail policies will reveal how NMCD developed its policies over time, and what

justifications were top of mind for NMCD staff during the process. These justifications

are likely to be a major part of the State Defendants' defense to Plaintiff's claims, and

Plaintiff is entitled to evidence about them and to seek testimony from the persons

involved. And if the actual considerations that went into the development of the mail

policies are different than the rationales the State Defendants raise to justify their

policies, that is probative of whether the new rationales are actually "legitimate" and

whether the current policy is "reasonably related" to any legitimate penological interest.

Defendant Lucero also objects that it would be unduly burdensome to identify

NMCD staff involved in the creation and adoption of each version of NMCD's mail

policies, but this is factually unsupported. A party objecting to an interrogatory is

"required to 'show specifically how, despite the broad and liberal construction afforded

the federal discovery rules, each question is overly broad, burdensome, or oppressive by

submitting affidavits or offering evidence revealing the nature of the burden.'" *Soseeah*

*v. Sentry Ins.*, No. CV 12-1091 RB/ACT, 2013 WL 11327129, at *2 (D.N.M. Nov. 4,

2013) (quoting *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 519 (D. Kan. 2010)).

There is no reason to believe that it would be difficult to identify the presumably limited number of staff involved in creating the policies, and Defendant Lucero has presented no explanation, let alone evidence, why it would be unduly burdensome to identify them.

The State Defendants also object to Interrogatory No. 3 and RFP No. 4 as irrelevant because CD-151200 "has been in effect[] many years prior to the relevant time period," and claim Plaintiff seeks "documents and communication from thirty (30) years prior to the litigation at hand." Muñoz Decl., Ex. C at 6; Ex. D at 12. Regardless of when CD-151200 was initially adopted, it is undisputed that there are four versions that were in effect at different points during the relevant time period. *See id*., Ex. C at 7. The restrictions on publications and correspondence articulated in these versions of the policy, and NMCD's justifications for them, are relevant even if they were initially developed prior to the relevant time period, as Plaintiff will need to counter any argument that they are "reasonably related to legitimate penological interests" to establish their First Amendment claim under *Turner*, 482 U.S. at 89. Plaintiff is entitled to discover documents and communications regarding those NMCD's mail policies.

> **3.    Reasons and Rationales for, and Penological or Security Interests Promoted by, NMCD Mail Policies and Procedures (Interrogatory No. 5, 7-8 and RFP Nos. 15-18).**

Interrogatory Nos. 5 and 7-8 seek the reasons and rationales for the restrictions in CD-151200 and the "Inmate Mail Changes" Memo on the delivery of publications or correspondence addressed to NMCD incarcerated persons (and the factual basis for them), including any alternative rules or measures that were considered. Muñoz Decl., Ex. A at 9-10. RFP Nos. 15 and 16 seek all documents which support any penological or

security interests the State Defendants claim to be promoted by restrictions or limitations

on—and the rejection of—the delivery of mail addressed to NMCD incarcerated persons.

*Id.*, Ex. B at 11-12.  RFP Nos. 17 and 18 seek documents concerning the reasons and

rationales for the changes described in the "Inmate Mail Changes" Memo, as well as

what impacts those changes have had on any penological or security interests the State

Defendants claim to be promoted by those changes.  *Id.* at 12.[2]

   These documents and information are crucial to prove that NMCD's policies

violate HRDC's First Amendment right to communicate with incarcerated persons.

Plaintiff needs to understand what allegedly "legitimate and neutral government

objective" the State Defendants are relying on to justify NMCD's censorship of HRDC's

mailings.  *Turner*, 482 U.S. at 89-90.  In order to prevail on its First Amendment claim,

Plaintiff must show that the restrictions NMCD has adopted in its mail policies are not

reasonably related to any legitimate government interest.

   For Interrogatory No. 7, which seeks the reasons for NMCD's "Inmate Mail

Changes" Memo and any alternative rules or measures that were considered, Defendant

Lucero asserts that "[t]he reason for the change was an attempt to address security

concerns about illegal drugs sent through the mail to inmates.  Magazines were no longer

accepted because of practical difficulties in scanning them through the contractor's

---

[2] For RFP Nos. 15-17, the State Defendants stated they "are in the process of redacting personal information from incident reports regarding the sending of drugs through the mail," Muñoz Decl., Ex. D at 23-25, but have not produced the incident reports nor confirmed whether they are the only responsive documents in their possession.  *Id.* ¶ 15.

process." Muñoz Decl., Ex. C at 10. This provides nothing about alternative measures that were considered, which is important information in order to apply the *Turner* factors and assess whether easy alternatives exist that may show the restriction is an "exaggerated response." *Thornburgh v. Abbott*, 490 U.S. 401, 418 (1989).[3]

Defendant Lucero also objects to Interrogatory No. 7 as an improper contention interrogatory which seeks information better obtained through a deposition. Muñoz Decl., Ex. C at 10. "Contention interrogatories are interrogatories that seek to clarify the basis for or the scope of an adversary's claims," asking a party "to explain how the law applies to the facts." *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007). Interrogatory No. 7, by contrast, seeks only to identify relevant facts. *See id.* ("Contention interrogatories are distinct from interrogatories that request identification of witnesses or documents that support a party's contentions."). And the Federal Rules do not permit a party to dictate the methods by which another party seeks discovery, so Defendant Lucero's opinion that the information sought should be obtained through a deposition is of no moment. *See White v. Union Pac. R. Co.*, No. 09-1407-EFM-KGG, 2011 WL 721550, at *2 (D. Kan. Feb. 22, 2011) (citation omitted).

---

[3] Defendant Lucero objects to Interrogatories Nos. 5 and 8 because she says they are duplicative of Nos. 4 and 7, respectively. Interrogatories Nos. 5 and 8 request that she "[s]et forth in specific detail the factual basis for the reason(s) and/or rationale(s) identified by you in response to" Nos. 4 and 7. Muñoz Decl., Ex. A at 9-10. These are not duplicative, as Interrogatories Nos. 4 and 7 do **not** seek the factual basis for the reasons and rationales that NMCD says justify the restrictions on the delivery of mailings in its mail policies. These factual bases are probative of whether the rationales put forward by the State Defendants are "reasonably related to legitimate penological interests," and whether they could be achieved without censoring HRDC's publications.

The State Defendants object to RFP No. 18 because NMCD "administrates 8 different prison facilities, over 5,000 incarcerated persons per year and comprises a staff of over 1,800 people." Muñoz Decl., Ex. D at 26. They argue that Plaintiff improperly seeks documents regarding NMCD prison facilities operated by Defendants MTC and GEO. *Id.* Plaintiff agreed to limit the scope of this RFP to just the State-run prison facilities and staff directly employed by NMCD. *See id.*, Ex. E at 2.[4] But the State Defendants have presented no evidence to suggest that all 1,800 NMCD employees are involved in the review and inspection of incoming mail addressed to incarcerated persons; it is far more likely that there are a small number of staff at each prison who work in the mailroom and/or are responsible for supervising mailroom staff. The State Defendants have also presented no evidence to suggest that NMCD, a large and sophisticated government agency, does not have the resources and technology necessary to run targeted searches through their records to find relevant information. They have not shown why responding to this RFP would not be proportional to the needs of the case.

### 4. Supervision and Training On NMCD Mail Policies and Procedures (Interrogatory No. 2 and RFP Nos. 5-6).

Interrogatory No. 2 requests the identity of all NMCD staff that have supervised, overseen, or provided direction or instruction regarding the implementation of NMCD's mail policies, and for each such person, descriptions of their duties and dates they were responsible for those duties. Muñoz Decl., Ex. A at 8. RFP Nos. 5-6 ask for training

---

[4] Plaintiff agreed to limit the scope in this manner of each Interrogatory and RFP that the State Defendants objected to on this basis.

documents with respect to NMCD mail policies, and documents which provide guidance on the interpretation and/or implementation of those policies. *Id.*, Ex. B at 9-10.[5]

With these discovery requests, Plaintiff seeks to identify NMCD's supervisors who oversee and train staff that make decisions about whether to reject incoming mail pursuant to NMCD's mail policies. These are potential defendants and witnesses who can speak to how NMCD's mail policies are applied in practice to censor incoming mail and publications. Information and documents about NMCD's process for training staff on its policies is also relevant as it will reveal how NMCD supervisors instruct line staff to apply the policies in practice, which is particularly important with respect to the portions of NMCD's mail policies that Plaintiff challenges as unconstitutionally vague.

Defendant Lucero objects to Interrogatory No. 2 in part because it is "comprise[d] of multiple subparts," and includes "an unrelated request for the NMCD standards and criteria." Muñoz Decl., Ex. C at 4. But Interrogatory No. 2 does not seek NMCD standards and criteria. It seeks the identity of NMCD staff that may be key witnesses for Plaintiff in proving its case. Moreover, an "interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question,

---

[5] The State Defendants object to Interrogatory No. 2 and RFP Nos. 5-6 as overly broad and unduly burdensome based on the same reasoning as RFP No. 18—the large total number of staff NMCD employs. *See* Section I.A.3, *supra*. For Interrogatory No. 2, they also argue that the four-year time period is too broad and that Plaintiff seeks a "plethora of personal information" that would be difficult to compile and produce. *See* Muñoz Decl., Ex. C at 4-5. None of these requests seek personal information regarding NMCD employees. And the State Defendants do not provide factual support demonstrating the nature of the purported burden in responding to these requests or why the time period covered by the Interrogatory is unreasonable.

although the breadth of an area inquired may be disputable." *Callahan v. Albuquerque Tech. Vocational Inst.*, No. CIV 97-1213 JP/KBM, 2001 WL 37125200, at *2 (D.N.M. Apr. 25, 2001) (citation omitted). Interrogatory No. 2 seeks the identity of NMCD staff involved in the supervision and training of other staff regarding NMCD mail policies, including on the standards and criteria used to review incoming mail addressed to incarcerated persons, and is thus properly considered a single question.

Finally, the State Defendants object to RFP Nos. 5 and 6 as overly broad and unduly burdensome in part because they claim that many of the records which may be responsive to these requests are not stored electronically. Muñoz Decl., Ex. D at 13-14. However, the State Defendants provide no further explanation as to how and why searching for and producing these documents would be unduly burdensome or not proportional to the needs of the case. They have not provided sufficient legal or factual support for their breadth and burden objections, and cannot withhold documents on this basis. *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164 MLBDWB, 2007 WL 950282, at *4 (D. Kan. Mar. 26, 2007) ("The bare allegation … that searching for pre–2003 hard copy documents is significant for several defendants … is not sufficient to show undue burden and expense ….").

### 5.    Lawsuits Challenging NMCD Mail Policies and Procedures (RFP No. 10).

RFP No. 10 requests "[a]ll Complaints and Answers filed in court at any point during the relevant time period in lawsuits challenging any NMCD policy or polices responsive to [RFP] No. 1." Muñoz Decl., Ex. B at 10-11. In response, the State

Defendants produced copies of documents from a claim filed by John F. Steele against the NMCD in Oregon Small Claims Court on May 1, 2023. *Id.* ¶ 7. However, they otherwise object that this RFP seeks documents which are publicly available, and point Plaintiff to https://caselookup.nmcourts.gov/caselookup/app. *Id.*, Ex. D at 18. "Even if information is publicly available, the information may still be discoverable if the information does not appear to be 'equally accessible to all parties[.]'" *Peter D Holdings LLC v. Wold Oil Props.*, LLC, No. 17-CV-212-R, 2019 WL 7838432, at *5 (D. Wyo. Oct. 23, 2019) (citation omitted). Notably, no court documents are available on the New Mexico Case Lookup page. Muñoz Decl. ¶ 12. More importantly, Plaintiff and its counsel do not have the information necessary to know what cases to look for, for example, which of the many lawsuits that are filed against NMCD (including *pro se* cases by incarcerated persons) included a legal challenge to its incoming mail policies. The State Defendants are in a much better position to know about the existence of lawsuits to which they or NMCD are parties.

## B. Discovery Concerning the Review and Handling of Incoming Mail Addressed to Incarcerated Persons.

### 1. Individuals Responsible for Reviewing and Handling Incoming Mail (Interrogatory No. 1 and RFP Nos. 13-14).

Interrogatory No. 1 seeks the identity of all NMCD staff whose duties have included reviewing or inspecting incoming mail addressed to incarcerated persons or deciding whether or not to deliver such mail, and for each such person, descriptions of their duties and dates they were responsible for such duties. Muñoz Decl., Ex. A at 8. These individuals are potential defendants and witnesses who were directly involved in

the decision to censor HRDC's materials.  Plaintiff is entitled to know the identities of these individuals who will show how NMCD's mail policies and procedures are actually applied in practice at its prison facilities.[6]

Because the "Inmate Mail Changes" Memo instructs "Offender Families" to send mail addressed to incarcerated persons to a P.O. Box address in Tampa, Florida, in the care of "Securus Digital Mail Center – NMCD," Shinn-Krantz Decl. ¶ 5 & Ex. A, in RFP No. 13, Plaintiff also seeks "[a]ll contracts or other agreements" between NMCD and Securus Technologies ("Securus"), the third-party vendor that runs the Digital Mail Center.  Muñoz Decl., Ex. A at 11.  RFP No. 14 seeks "[a]ll documents and communications concerning the formation and implementation of any contract or other agreement" between NMCD and Securus.  *Id.*

NMCD's contracts or agreements with Securus govern how NMCD processes incoming mail, which includes publications and correspondence mailed by HRDC to NMCD incarcerated persons.  To the extent NMCD staff no longer review and inspect incoming mail, then how NMCD instructs Securus to conduct this review and inspection is relevant for Plaintiff to understand how NMCD's mail policies, protocols, customs, etc. are being applied in practice.  Despite what the State Defendants claim, Muñoz Decl., Ex. D at 21-22, the contracts or agreements are relevant even if Securus is not a party to

---

[6] Defendant Lucero objects to Interrogatory No. 1 as overly broad and unduly burdensome based on the large total number of staff NMCD employs, and that the four-year time period is too broad, the same reasoning as RFP No. 18 and Interrogatory No. 2.  *See* Sections I.A.3, I.A.4, *supra*.  This objection is legally and factually unsupported for the same reasons explained above.  *Id.*

this litigation, given the fact that Securus is acting as NMCD's agent with respect to the processing of incoming mail addressed to incarcerated persons. Moreover, the contracts as a whole do not become irrelevant or undiscoverable even if they include provisions about services which are not at issue in this case.

The State Defendants also object to RFP No. 14 because they claim that the contract "stand[s] on its own." *Id.* But such documents and communications between NMCD and Securus are relevant to show the parties' discussions regarding how Securus would process publications mailed to incarcerated persons, on NMCD's behalf. The contracts on their own will not show the particularities of how Securus applies NMCD's mail policies in practice.

Finally, the State Defendants object to both RFPs because they claim that they request documents protected by "the attorney-client privilege, attorney work product doctrine, and executive privilege doctrine ...." *Id.* The response to RFP No. 13 indicates that the State Defendants are "in the process of preparing a privilege log for those documents for which they claim confidentiality." *Id.* The response to RFP No. 14 does not. *Id.* To the extent that the State Defendants intend to withhold in full or in part documents based on "confidentiality" concerns, Plaintiff believes these can be resolved by a protective order. But the State Defendants have not stated whether they would be willing to enter a protective order. *Id.* ¶ 13. For RFP No. 14, if the State Defendants intend to withhold documents in full or in part based on any privileges, then they must provide a privilege log.

**2.     The Average or Typical Amount of Mail and Publications Received and Rejected by NMCD (RFP Nos. 19-20).**

RFP Nos. 19 and 20 seek documents showing the average or typical amount of

publications addressed to incarcerated persons which are received, and which are

rejected, by NMCD staff, compared to the average or typical total amount of mail

received or rejected.  Muñoz Decl., Ex. B at 12-13.  One of the *Turner* factors considers

"the impact that accommodating the asserted right will have on other guards and

prisoners, and on the allocation of prison resources."  482 U.S. at 89-90.  Thus, the State

Defendants may argue that inspecting HRDC's materials and allowing their intended

incarcerated recipients to receive them will take up a significant amount of NMCD's

resources.  Plaintiff does not believe this is the case, as it does not send a large volume of

materials to NMCD incarcerated persons.  The documents sought through these RFPs are

likely to reveal whether there is any factual basis for this anticipated defense.[7]

**3.     HRDC Publications and Correspondence Mailed to Incarcerated Persons at NMCD  (RFP Nos. 7-9).**

RFP No. 7 seeks all documents issued or created by NMCD concerning the non-

delivery of any HRDC correspondence or publications addressed to an incarcerated

person.  Muñoz Decl., Ex. B at 10.  RFP No. 8 seeks all documents submitted by NMCD

---

[7] The State Defendants object to RFP Nos. 19 and 20 as overly broad and unduly burdensome based on the same reasoning as RFP No. 18—that NMCD is a large entity with over 1,800 employees.  *See* Section I.A.3, *supra*.  This objection is legally and factually unsupported for the same reasons explained above.  *Id.*  For RFP No. 20, they also repeat their claim that many of the records which may be responsive to these requests are not stored electronically, *see* Section I.A.4, *supra*.  This objection is also legally and factually unsupported, for the reasons already explained.  *Id.*

incarcerated persons to any NMCD staff (e.g., grievances) concerning HRDC, Prison

Legal News, and/or any mail to or from Prison Legal News or HRDC, as well as all

NMCD responses thereto.  *Id.*  Finally, RFP No. 9 seeks all NMCD documents

concerning or mentioning Prison Legal News or HRDC that were created during the

relevant time period.  *Id.*  As these requests all seek documents concerning HRDC, as

well as materials HRDC mailed to incarcerated persons which were censored by NMCD,

they are highly relevant to this litigation.  The State Defendants do not argue otherwise.[8]

### C.    Discovery Regarding Problems or Security Incidents at NMCD Facilities (RFP No. 21).

RFP No. 21 seeks all documents concerning incidents at any NMCD prison in

which HRDC correspondence or publications were used to cause a security problem (e.g.,

incident reports and grievances).  Muñoz Decl., Ex. B at 13.  As explained above, the

State Defendants will likely argue that their NMCD mail policies are "reasonably related

to legitimate penological interests."  *Turner,* 482 U.S. at 89.  A common penological

interest used to justify many prison policies is the prison's interest in addressing security

concerns, e.g., prohibiting contraband from entering the prison.  To the extent the State

Defendants may argue that allowing incarcerated persons to receive HRDC publications

---

[8] The State Defendants object to RFP Nos. 7-9 as overly broad and unduly burdensome based on the same reasoning as RFP No. 18 and Interrogatory No. 2, the large total number of staff NMCD employs, and that the four-year time period is too broad.  *See* Sections I.A.3, I.A.4, *supra*.  This objection is legally and factually unsupported for the same reasons explained above.  *Id.*  They also repeat their claim that many of the records which may be responsive to these requests are not stored electronically, *see* Section I.A.4, *supra*.  This objection is also legally and factually unsupported, for the reasons already explained.  *Id.*

will cause security concerns, Plaintiff is entitled to review during discovery information and documents showing past security problems.[9]

**D.    Discovery Regarding Availability of Publications in Digital Forms (Interrogatory No. 16 and RFP Nos. 22-24).**

Interrogatory No. 16 asks Defendant Lucero to identify each HRDC publication that has been made available in digital form to incarcerated persons at NMCD, including, *inter alia*, "any NMCD staff who played a role in making the publication available." Muñoz Decl., Ex. A at 12.  RFP No. 22 asks for all documents and communications concerning any HRDC publication that has been made available in digital form to incarcerated persons.  *Id.*, Ex. B at 13.

Whether HRDC's publications have been made available in digital form to incarcerated persons is relevant to one of the *Turner* factors, "whether there are alternative avenues that remain open to the inmates to exercise the right."  482 U.S. at 89-90.  To the extent NMCD intends to argue that incarcerated persons do not need to receive physical copies of HRDC's publications because they have access to them in digital form, then Plaintiff will need information and documents about the viability of this alternative for both HRDC and its incarcerated subscribers.

---

[9] The State Defendants object to RFP No. 21 as overly broad and unduly burdensome based on the same reasoning as RFP No. 18 and Interrogatory No. 2—that NMCD is a large entity with over 1,800 employees, and that the four-year time period is too broad. *See* Sections I.A.3, I.A.4, *supra*.  These objections are legally and factually unsupported for the same reasons explained above.  *Id.*  They also repeat their claim that many of the records which may be responsive to these requests are not stored electronically, *see* Section I.A.4, *supra*.  This objection is also legally and factually unsupported, for the reasons already explained.  *Id.*

Defendant Lucero objects to Interrogatory No. 16 as vague, because she contends that "Plaintiff does not define what they mean when they say 'played a role' in making the publications available." Muñoz Decl., Ex. C at 21. However, the interrogatory is clear as written. "Played a role" refers to the process of copying and/or scanning the HRDC publication, and putting the file on the tablet system or computer, or providing it to a vendor for such purpose, or instructing a vendor to get an HRDC publication and put it on the tablet or computer system.[10]

NMCD has a third-party vendor it uses for the provision of digital copies of publications to NMCD incarcerated persons, Smart Communications Holding, LLC ("Smart Communications"). RFP No. 23 seeks "[a]ll contracts or other agreements" between NMCD and Smart Communications, while RFP No. 24 seeks "[a]ll documents and communications concerning the formation and implementation of any contract or other agreement" between NMCD and Smart Communications. Muñoz Decl., Ex. B at 13-14. The contract with Smart Communications governs how NMCD provides digital copies of HRDC publications to incarcerated persons. It is therefore relevant for Plaintiff to understand whether making HRDC's publications available in digital form is a viable alternative under *Turner*. As explained with respect to objections to producing the Securus contract, contracts or agreements are relevant even if Smart Communications is

---

[10] Defendant Lucero also objects to Interrogatory No. 16 as overly broad and unduly burdensome based on the same reasoning as RFP No. 18 and Interrogatory No. 2—that NMCD is a large entity with over 1,800 employees, and that the four-year time period is too broad. *See* Sections I.A.3, I.A.4, *supra*. This objection is legally and factually unsupported for the same reasons explained above. *Id.*

not a party to this litigation, as Smart Communications is acting as NMCD's agent with respect to the provision of publications in digital form, and the contracts do not become undiscoverable even if they include provisions about services not at issue in this case.

The State Defendants object to RFP No. 24 because they claim that the contract "stand[s] on its own." Muñoz Decl., Ex. D at 32. Documents and communications between NMCD and Smart Communications are relevant to show the parties' discussions regarding how Smart Communications will provide incarcerated persons with publications in digital form. The contracts on their own will not show the efficacy of this avenue as an alternative to providing incarcerated persons with physical copies of publications, and how it will work in practice.

Finally, the State Defendants object to RFP Nos. 22-24 because they claim that they request documents protected by "the attorney-client privilege, attorney work product doctrine, and executive privilege doctrine …." Muñoz Decl., Ex. D at 30-32. If the State Defendants intended to withhold documents in full or in part based on any of the above-numerated privileges, then they must provide a privilege log.

### E. Discovery Regarding The Housing of Incarcerated Persons at LCCF (RFP Nos. 11-12).

Finally, Plaintiff requests information concerning LCCF, which we are informed and believe housed NMCD incarcerated persons up until June 30, 2025. LCCF was operated by Defendant GEO, but GEO's contract is with Lea County, New Mexico, not NMCD. Thus, RFP No. 11 asks for "[a]ll contracts or other agreements" between NMCD and Lea County, New Mexico concerning the operation of LCCF. Muñoz Decl.,

Ex. A at 11. Such contracts are highly relevant to show what agreement NMCD and Lea County reached regarding the application of NMCD's mail policies to NMCD incarcerated persons housed at LCCF. According to Defendants Evans and Calabrese, GEO was "contractually obligated to adhere to NMCD's policies and procedures, including its policies and procedures governing inmate correspondence and mail" at LCCF. ECF No. 30 at 3. NMCD's contracts with Lea County will show whether the County agreed to comply with its mail policies and to ensure GEO did so.

The State Defendants only produced a July 2024 resolution from the Lea County Board of Supervisors extending the County's contract with GEO for the operation of LCCF for one year. Muñoz Decl. ¶ 8. They did not produce the underlying contracts referenced in that resolution, even though they confirm such documents exist. *See id.*, Ex. D at 19 ("The agreement between the NMCD and Lea County, New Mexico has been in effect since 2004 when an amended agreement between the two parties was signed.")

RFP No. 12 seeks all documents and communications between NMCD and GEO during the relevant time period concerning the interpretation or implementation of NMCD's mail policies. Muñoz Decl., Ex. B at 11. As noted above, GEO claims it was contractually obligated to adhere to NMCD's mail policies. ECF No. 30 at 3. Communications exchanged between the two entities will reveal if they discussed this contractual obligation, which GEO suggests absolves it of any wrongdoing with respect to the violation of HRDC's constitutional rights. The documents will also reveal whether NMCD provided instruction to GEO on how to interpret and implement its mail policies,

including whether NMCD instructed GEO to reject publications at LCCF.[11]

Finally, the State Defendants also claim that some documents "may not be discoverable as they are covered by attorney-client privilege, attorney work product doctrine, executive privilege, or statutory confidentiality." Muñoz Decl., Ex. D at 20. As explained above, *see* Section I.B.1, *supra*, Plaintiff believes that documents over which the State Defendants claim confidentiality can be produced under a protective order if necessary. But if the State Defendants intend to withhold in full or in part any documents responsive to RFP No. 12 based on any privilege, they must produce a privilege log.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion should be granted. We respectfully request that Defendants be ordered to produce all responsive documents to Plaintiff's RFPs, and to provide complete answers to Interrogatories Nos. 1-3, 5-6, and 8.

---

[11] The State Defendants object to RFP No. 12 as overly broad and unduly burdensome based on the same reasoning as RFP No. 18 and Interrogatory No. 2—that NMCD is a large entity with over 1,800 employees, and that the four-year time period is too broad. *See* Sections I.A.3, I.A.4, *supra*. This objection is legally and factually unsupported for the same reasons explained above. *Id.* They also repeat their objection that many of the records which may be responsive to these requests are not stored electronically, *see* Section I.A.4, *supra*. This objection is also legally and factually unsupported, for the reasons already explained. *Id.*

September 2, 2025                          ROSEN BIEN GALVAN & GRUNFELD LLP

By:/s/ *Brenda Muñoz*
    Ernest Galvan, Cal. Bar No. 196065
    Benjamin Bien-Kahn, Cal. Bar No. 267933
    Marc J. Shinn-Krantz, Cal. Bar No. 312968
    Brenda Muñoz, Cal. Bar. No. 328813
    Attorneys for HUMAN RIGHTS
    DEFENSE CENTER
    101 Mission Street, Sixth Floor
    San Francisco, California  94105-1738
    Telephone: (415) 433-6830
    Facsimile: (415) 433-7104
    * Admitted *Pro Hac Vice*

HUMAN RIGHTS DEFENSE CENTER
    Jonathan P. Picard, Fla. Bar No. 105477
    P.O. Box 1151
    Lake Worth, Florida  33460
    Attorneys for HUMAN RIGHTS DEFENSE
    CENTER
    Telephone: (561) 360-2523
    Facsimile: (561) 828-8166
    * Admitted *Pro Hac Vice*

IVES & FLORES P.A.
    Laura Schauer Ives, SB# 12463
    Adam C. Flores, SB# 146686
    Attorneys for HUMAN RIGHTS DEFENSE
    CENTER
    925 Luna Circle NW
    Albuquerque, New Mexico  87102
    Telephone: (505) 364-3858
    Facsimile: (505) 364-3050

I hereby certify that on this 2d day of September, 2025, I caused the foregoing to be electronically filed via the CM/ECF system which caused service on all counsel of record by electronic means.

*/s/ Brenda Muñoz*
Brenda Muñoz