IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

**HUMAN RIGHTS DEFENSE CENTER,**

     **Plaintiff,**

v.                                                                         No. 1:24-CV-01091-JMR-KRS

**MICHELLE LUJAN GRISHAM,**
individually and in her capacity as Governor of
the State of New Mexico; **ALISHA TAFOYA LUCERO,**
individually and in her capacity as
Cabinet Secretary of the New Mexico
Corrections Department; **MELANIE
MARTINEZ,** individually and in her capacity
as Deputy Secretary of the New Mexico
Corrections Department; **GARY MACIEL**,
individually and in his capacity as Deputy
Secretary of the New Mexico Correction
Department; **BRIAN R. EVANS**, individually
and in his capacity as Chief Executive Officer
of The GEO Group, Inc.; **WAYNE H.
CALABRESE**, individually and in his capacity
as President and Chief Operating Officer of The
GEO Group, Inc.; **THE GEO GROUP, INC.
d/b/a LEA COUNTY CORRECTIONAL
FACILITY,** a corporation**;**
**SCOTT MARQUARDT,** individually and in his
Capacity as Chief Executive Officer of
Management & Training Corporation; **DANIEL
MARQUARDT**, individually and in his capacity
As President of Management & Training
Corporation; **MANAGEMENT & TRAINING
CORPORATION** d/b/a **OTERO COUNTY
PRISON FACILITY,** a corporation; **JOHN
AND JANE DOES 1-20,** individually and in their official
capacities; and **ENTITIES 1-10,**

     **Defendants.**

1

# DEFENDANTS' SUPPLEMENTAL RESPONSE TO THE PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL

COME NOW Defendants Grisham, Lucero, Maciel, and Martinez, by and through their counsel of record, CARRILLO LAW FIRM, P.C. (Raúl A. Carrillo, Jr.) and hereby submit this supplemental briefing on the Plaintiff's Motion to Compel:

## INTRODUCTION

Defendants provide this supplemental briefing at the direction of the Court in its Order dated November 17, 2025. Defendants have been asked to respond to the arguments provided in the Plaintiff's Reply Brief in Support of its Motion to Compel. Plaintiff has alleged the Defendant has not provided responses or documents to many of its Interrogatories and Requests for Production. Defendants respectfully direct the Court to the previous six supplemental responses to the Plaintiff's discovery requests as support for their assertion they are attempting to comply with the Plaintiff's requests in good faith. Plaintiff admits that the Defendants have provided many thousands of pages of documents, which they now claim are "of little relevance" to the matter at hand. Plaintiff's determination that they are of little relevance, is not the same as saying they are not responsive or irrelevant. Plaintiff has controlled the scope of its own requests, and if they have "over asked" that ius not within the Defendants' control. Even if the request itself has been overbroad, Plaintiff is being provided the documents it has asked for, especially given that the State is a public entity which has no interest in being other than transparent. Plaintiff is still being provided the documents it has asked for even as this brief is submitted. Plaintiff was asked to narrow its requests in order to make the information they were seeking easier to find (notwithstanding the Defendants' objections), but they chose to limit their own requests by a narrow margin. At issue here are Plaintiff's requests for information from a very

large state organization for the span of four (4) years. Plaintiffs requests necessarily require time to respond to as the Defendants have been doing, and continue to do in good faith.

## ARGUMENT

**I.  THIS COURT DOES NOT NEED TO ENTER AN ORDER COMPELLING PRODUCTION OR RESPONSE, AND SUCH AN ORDER MAY NOT BE HELPFUL IF IT NARROWS THE TIME ALLOWED FOR PRODUCTION, BECAUSE DEFENDANTS' CONTINUE TO PROVIDE DOCUMENTS WHICH ARE RESPONSIVE TO THE PLAINTIFF'S DISCOVERY REQUESTS.**

There can be no question that the Defendants are and have been actively participating in the discovery process. In addition to the massive document production already undertaken and completed, the State Defendants have participated in four depositions during the Fall of 2025 concerning the testimony of witnesses Maciel, Hatch, Richards and Lazarin. Nevertheless, Defendants' resources are limited and the process of obtaining emails, documents, and communications is time consuming. It requires coordination across multiple departments within NMDC and coordination with its counsel for review, redaction, and eventual production. This is also necessarily balanced against the ability of counsel, a small firm, to process and review. As the Defendants have stated repeatedly throughout this process, much of the information that the Plaintiff seeks takes time to obtain. Some of the documentation is not stored electronically and requires physical access to documents to be scanned and uploaded. These documents need to be obtained by NMCD staff within the facilities in order to be scanned and transported. In order to do so, staff at the facilities – who have job descriptions unrelated to litigation - must have or find time in their work schedules to be able to go and search for the physical documents, which is difficult to do given the needs of the facilities.

Other documents are simply less accessible due to the massive volume of results returned from the Plaintiff's overly broad requests, particularly for emails. Plaintiffs requests for

documents related to the drafting process for NMCD Mail Policies and procedures is ongoing. The Defendants have provided some documents which are responsive but continues to search through email for responsive documents. This process is time consuming and shows up with a large number of hits in the email server depending on how requests are worded. For example, an email search from 10/5/2021 – present for "CD-151200" or "CD-151201" provides six-thousand and ninety-three (6,093) total matches spread across seven hundred and ninety locations (790) locations. The same search for emails with the words "Inmate Mail Change Memo" provides significantly less results with only one hundred and eighty-four (184) matches spread across thirty- five (35) locations. Defendants are providing the results of these email searches as quickly as possible, and have provided some of these results on December 5, 2025. *See*, COS for Seventh Supplemental Response.

There are sixty-three thousand five hundred and sixteen (63,516) matches for "Securus" across one thousand and fifty-three (1,053) locations and the words "mail," "train," or "training" appear four million thirty-three thousand and eighteen times (4,033,018) in two thousand nine hundred and thirty-two documents (2,932). The majority of these documents comprise a single email which is saved as an Outlook Data File. These data files then must be converted from Outlook format to .pdf in order to Bates Stamp and mark for production. In order to convert these files, each data file is uploaded to counsel's staff's own Outlook account, so each email in the data file can be printed one by one into .pdf format for production. The attachments also need to be converted and reviewed for privileged information.  Depending on the press of other cases 2 -3 members of counsel's office must sit at the computer and open each individual email and print the contents of the email and the attachments into a new format. The process simply takes

time. Attempts to convert or print to .pdf *en masse* often crash the computers being used, which means the process must often be restarted.

This is only step one in the process and does not include review of the materials, redaction, or marking the documents as privileged and updating a privilege log. Defendants have provided some responsive documents and continue to supplement in good faith as many of the responses as possible as quickly as possible.

Defendants have provided tens of thousands of pages of documents to the Plaintiff which were responsive to the Plaintiff's requests. Plaintiff now says that those documents are "of little relevance" to the issues at hand. Plaintiff should not attempt to utilize the court to punish the Defendants for the Defendants good faith compliance with the requests which were made. Defendants objected to a number of requests as overly broad and unduly burdensome but the Plaintiff refused to drop the requests or otherwise narrow them further than simply limiting the requests to those facilities within Defendants control. Plaintiff is now suffering from the load of information being transferred to it because the Plaintiff is seeking apparently less than relevant information in its requests, despite claiming that all of its requests are for relevant information. *See*, Motion to Compel generally.

The Defendants, now aware of the claim that the information provided, while responsive to the requests and relevant to the requests, is not what the Plaintiff is looking for, would invite the Plaintiff to once again narrow its requests. Plaintiff's claims that discovery is at an impasse is belied by the six supplemental responses comprising tens of thousands of pages of responsive documents, which the Plaintiff requested, and those documents being presented today. See, COS Seventh Supplemental Response filed 12/5/2025. Plaintiff's frustration may be warranted to a degree, months of work and hundreds of thousands of pages of documents are not searched

through quickly, but the Defendants continue to provide their responses and supplements in good faith. See, Certificates of Service previously filed Plaintiff seeks an order compelling production of documents in the same paragraph as their admission that the Defendants have provided thousands of pages of documents. See, Reply in Support of Motion to Compel pg. 5. Plaintiff requested documents which it now believes are less than relevant, that is not an error or bad faith on the part of the Defendants who have complied with the requests. Plaintiff states that there is no agreement on what the Defendants will produce. The Defendants intend to produce all the responsive documents which they have and they are in the process of doing so. If the Plaintiff is frustrated with the pace of production or the production of documents it believes are irrelevant, then the Plaintiff is welcome to assist in narrowing down their requests to the information they believe is actually relevant to the case, rather than the fishing expedition they are attempting here. Unfortunately, a wider net means more fish, even in the desert.

    Plaintiff is correct that the Defendant has produced many incident reports and mail logs from a number of facilities. Plaintiff is also correct that the Defendant has not produced them from all facilities. That is also correct. The Defendants are attempting to compile all the information which is responsive to the Plaintiffs requests. As stated in their previous supplements, those document are responsive to the following requests served and so the Defendant provided them as required. Plaintiff would ask the Defendants not only to provide them with the requested documents, but also to pick through those responsive documents and determine which ones the Plaintiff will think are most relevant. Defendants have already objected that the majority of documents would not be relevant, that the request is overly broad and unduly burdensome, and that the Plaintiff needs to narrow their requests. See, Defendants Responses to Interrogatories and Requests for Production. The Plaintiff agreed to narrow some

requests, and chose not to for others, and the Defendant is simply complying as best as possible with that request. The incident reports regarding drugs and contraband sent through the mail are directly relevant to the decision to use a third-party mail sorting service, which is in turn directly relevant to the change in policy memo of December 2021, which is a key element of the Plaintiffs case – as they claim. *See, Plaintiff's Complaint* Further, as per the Plaintiff's requests in RFPs 19 and 20 the mail logs they claim are of little relevance are provided in order to illustrate the typical amounts of mail received at the facilities. Plaintiff may claim that the responsive documents provided are of little relevance, which is a determination for Plaintiff's counsel to make, but they cannot claim that the Defendant has not replied to RFPs 19 and 20 in good faith and in compliance with the requirements of the request made. Defendant is providing information as it is found and is made available to Defendants counsel, the incident reports and mail logs provided were among some of the information which was readily available and responsive to the above RFPs and is why it was provided first.

    In addition, obtaining the information from the facilities it administers is difficult for the Defendants in and of itself. Corrections officers or other staff must be pulled from duty in order to find documents and provide them to the NMCD General Counsel's office. Because of the nature of their work, this is difficult to schedule or find time for those persons to pull records, many of which are not in a digital format as the Defendant has previously stated. Plaintiff is well aware of the size of the NMCD from its previous lawsuits and is aware that its requests encompass a four-year span of time from 2021 to present. For the Plaintiff to act affronted by the time it takes or the amount of information produced, even after the Defendants notified them that a narrowed request would serve them better in finding their relevant information, is disingenuous.

Defendants would also like the Court to take note that they have not dropped their objections to these requests as overly broad and unduly burdensome, and have been providing what information they have available as soon as they have it notwithstanding those objections and despite incurring significant expense

> II. **DEFENDANTS ARE PROVIDING THOSE DOCUMENTS WHICH ARE RELEVANT AND NON-PRIVILEGED.**
>
> > a. **Discovery regarding NMCD Mail Policies and Procedures and the drafting thereof has been provided and will continue to be supplemented.**

Defendants have already provided a response to RFPs 1-3. Defendants responses included multiple versions of CD-151200 and CD151201 and include the word document used to draft the documents. Plaintiff is correct that there have been changes to the policy in this time and Defendants have provided the latest draft of the policy. As stated above, the Defendants are attempting to find any other emails, and attachments, referencing the policy however, the results are voluminous and difficult to sort through for the relevant information Plaintiff seeks. Defendants have provided some responsive emails which reflect upon the drafting and implementation of mail room policies and are attempting to narrow the overly broad search parameters in order to find relevant information.

Regarding the December 29, 2021 memorandum, as discussed in document D31149 – D31150 an email from Gary Maciel Director of the Adult Prisons Division to NMCD Wardens dated December 2, 2021, the purpose of the changes to the mail policies were due to inability of Securus (the third party mail processing service), to accept mail which they were unable to scan. There was not a debate or discussion regarding this change in policy and there were not additional drafts, because the policy change was not a determination by NMCD. Securus policies stated that anything that could not be scanned would not be accepted. The restriction was not

exclusive to the Plaintiff's publications, or any publications for that matter, and was not enforced by NMCD but rather by Securus which received the mail. *See, id.* NMCD decided to contact with Securus in order to address the significant issue of a "considerable" amount of contraband making its way into facilities through the mail. *See, id.* Defendants have produced a large number of incident reports from a number of facilities which support this claim – as the Plaintiff admits. *See, Reply in Support of Motion to Compel.*

        **b. Reasons and Rationales for and Penological or Security Interests promoted by NMCD Mail Policies and Procedures.**

As stated above, and as supported by the email Bates Numbered D31149 – D31150 from Defendant Gary Maciel on December 2, 2021, the penological or security interest promoted by the change in policy, was the prevention of drugs and other contraband being introduced to NMCD facilities through the mail. This is supported by the incident reports which were provided in response to RFPs 15 - 17. The change in mail policies discussed in the December 29, 2021 memo was due to this "considerable" amount of contraband which was being intercepted at facilities and making its way into facilities. NMCD had already begun attempting to address this issue in some of the larger facilities by having mail room staff photocopy inmate mail using rented photocopiers. The change in the mail room policies addressed in the December 29, 2021 memo was due to Securus inability to scan certain types of mail in its scanners, and was not a decision by NMCD. This email has been produced to the Plaintiff as part of the Seventh Supplemental Response filed December 5, 2025 in Response to RFP No. 4. *See, COS 7th Supplemental Response.*

As stated above, the Defendants are continuing to search for responsive documents and emails. Due to the volume of results returned in the search, Defendants are attempting to narrow down the search parameters and find more responsive emails or documents.

### c. A list of lawsuits challenging NMCD has been provided

Defendants have supplemented their response to this RFP again by providing a list of litigation against NMCD during the relevant time period which references or otherwise reflects on the Defendants mail policies in their Seventh Supplemental Response. *See, COS Seventh Supplemental Response*

### d. The Defendants have provided the Securus Technology Contract

Defendants have provided the requested Securus Technology Contract as part of their Seventh Supplemental Response to Plaintiff's Requests for Production. *See, COS Seventh Supplemental Response.*

### e. Publications and Correspondence Mailed to Incarcerated Persons at NMCD (RFP No. 9)

An email search for emails which mention Prison Legal News, Criminal Legal News, HRDC, or Human Rights Defense Center returns five thousand one hundred and sixty three matches (5,163) across two hundred and fifty two locations. Defendants have nevertheless continued to find and produce these emails, and have produced additional supplemental responses to this RFP in its Seventh Supplemental Response. *See, COS Seventh Supplemental Response.*

### f. Discovery Regarding Availability of HRDC Publications in Digital Forms (RFP No. 22).

Defendants have previously provided a supplemental response to the Plaintiff in their First Supplemental Response to Interrogatory No 16 which identified the time periods that the Plaintiffs publications were digitally available to the persons incarcerated in NMCD facilities. Defendants have identified additional emails referencing the provision of the Plaintiff's publication digitally at this time and are attempting to provide those emails as soon as possible.

Technical difficulties in converting those emails to a transmittable format have made that difficult.

### III. DEFENDANTS OBJECTIONS TO THE PLAINTIFF'S OVERLY BROAD AND UNDULY BURDENSOME REQUESTS ARE SUPPORTED

Defendants have previously argued that the Plaintiffs requests are unduly broad and overly burdensome. Perhaps the best evidence to support the Defendants argument is the Plaintiff's own admission that much of the documents which are responsive to their requests, are "of limited relevance." *See, Reply in Support of Motion to Compel pg. 6.* Defendants have attempted, despite their objections, to provide relevant information and documents to the Plaintiff as requested. *See, COS for Previous Six Supplements.* Plaintiff now admits that responsive documents it received from its Requests for Production are "of little relevance" and apparently little use to the Plaintiffs claims. Plaintiff admits then that its requests are overly broad, which is not the fault or responsibility of the Defendants.

In addition to this admission, the Defendants would point to the above arguments, that searching through the database of emails alone, provides a huge amount of responsive, though potentially irrelevant documents, which need to searched, converted, scanned, redacted, or otherwise reviewed and prepared for production. As described in its above responses, it is not as simple as searching for a keyword in an email thread and finding what you are looking for. It is especially complicated when some of the documents asked for, such as email referencing Prison Legal News or Human Rights Defense Center, will include large amounts of irrelevant emails. For instance a search for those keywords will include results such as automatic legal email which reference one of the Plaintiffs numerous lawsuits on the national stage. It has no relevance to the issues here, however it is a responsive document according to the Plaintiff's broad search terms under RFP No. 9. As described above, the process of receiving and converting and redacting and

transmitting the emails is time consuming, large pools of results mean that Defendants counsel has to spend more time converting documents of potentially "little relevance." As described above, even an allegedly simple search can return large numbers of results.

Defendants would argue that the Plaintiff's requests are not proportional to the needs of the case, again pointing to the requests which resulted in information and documents, "of limited relevance." *See, Reply in Support of Motion to Compel pg. 6.*

Whether a request is proportional depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See, Cruz v. AerSale, Inc.,* No. 2:22-CV-857 GJF/KRS, 2024 WL 4680600, at *3 (D.N.M. Nov. 5, 2024), amended, No. 2:22-CV-857 GJF/KRS, 2025 WL 1447538 (D.N.M. May 20, 2025). Defendants do not deny that there are important issues at stake in this case. There is no determined amount in controversy at this time, though the Plaintiff has claimed damages. Defendants do not deny that they have greater access to the requested information, however, they do argue the importance of much of this information to the matters at hand. As Plaintiff stated, the Defendants have produced a number of mail logs. *See, Reply in Support of Motion to Compel pg. 6.* These mail logs are documents responsive to RFP 19 and 20 in order to show the average amount of mail that the facilities receive. Defendant admits that these are not yet all of the mail logs for all of the facilities in the relevant time period. However, the Plaintiff requested the material and then explains that the provided mail logs include privileged and legal correspondence which is *not at issue in this case. See, Reply in Support of Motion to Compel pg. 6.* The Plaintiff's broad request paints documents as responsive, when they are not even relevant to the issues at hand, and is

therefore disproportional to the needs of the case. This is true as well of the incident reports. These documents are responsive to RFPs 15 - 17 and support a security or penological interest in changes to the mail policies which are at issue here. Plaintiff admits that they are of limited relevance because many of these incidents do not concern publications. However, that was not the request that the Plaintiff made. The documents are responsive, if they are of little relevance it is because the Plaintiff's requests are not proportional to the needs of the case. These requests include requests for documents which are clearly not important to resolving the Plaintiffs claims and incur unreasonable and unnecessary expense on the Defendants to provide. These disproportionate requests, which the Defendants have attempted to answer nonetheless, incur a significant expense on the Defendants as many staff hours are required to find and process the documents. Now Plaintiff notifies the Defendants that the information it sought was "of limited relevance" and attempts to shift the blame for its own lack of progress in its case to the Defendants.

## **CONCLUSION**

Defendants respectfully request that the Court deny the Plaintiff's Motion to Compel and require the Plaintiff to further narrow its requests for information and documentation to allow Defendants to more easily find the information Plaintiff is seeking, and grant any other relief deemed just and reasonable.

Respectfully submitted,

**CARRILLO LAW FIRM, P.C.**

*/s/ Raúl A. Carrillo, Jr.*
Raúl A. Carrillo, Jr.
P.O. Box 457
Las Cruces, NM 88004
(575) 647-3200
(575) 647-1463 (fax)
raul@carrillolaw.org
*Attorney for Defendants Grisham, Lucero, Martinez, and Maciel*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY, that a copy of the above document was served on November 28th, 2025 to the following via the District Court of New Mexico's CM/ECF filing system and email:

**Rosen Bien Galvan & Grunfeld, LLP**
Ernest Galvan, Cal. Bar No. 196065
Benjamin Bien-Kahn, Cal. Bar No. 267933
Marc J. Shinn-Krantz, Cal. Bar No. 312968
Brenda Muñoz, Cal. Bar No. 328813
Attorneys for HUMAN RIGHTS DEFENSE CENTER
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
* Admitted *Pro Hac Vice*

**HUMAN RIGHTS DEFENSE CENTER**
Jonathan P. Picard, Fla. Bar No. 105477
P.O. Box 1151
Lake Worth, Florida 33460
Attorneys for HUMAN RIGHTS DEFENSE CENTER
Telephone: (561) 360-2523
Facsimile: (561) 828-8166
* Admitted *Pro Hac Vice*

**IVES & FLORES P.A.**
Laura Schauer Ives, SB# 12463
Adam C. Flores, SB# 146686
Attorneys for HUMAN RIGHTS DEFENSE CENTER
925 Luna Circle NW
Albuquerque, New Mexico 87102
Telephone: (505) 364-3858
Facsimile: (505) 364-3050

                                                             */s/ Raúl A. Carrillo, Jr.*
                                                                Raúl A. Carrillo, Jr.