**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

HUMAN RIGHTS DEFENSE CENTER,

    Plaintiff,

    v.                                                                                     No. 1:24-cv-01091-SMD-KRS

MICHELLE LUJAN GRISHAM, individually
and in her capacity as Governor of the State of
New Mexico; ALISHA TAFOYA LUCERO,
individually and in her capacity as Cabinet
Secretary of the New Mexico Corrections
Department; MELANIE MARTINEZ,
individually and in her capacity as Deputy
Secretary of the New Mexico Correction
Department; GARY MACIEL, individually and
in his capacity as Deputy Secretary of the New
Mexico Correction Department; BRIAN R. EVANS,
individually and in his capacity as
Chief Executive Officer of The GEO Group, Inc.;
WAYNE H. CALABRESE, individually
and in his capacity as President and
Chief Operating Officer of The GEO Group, Inc.;
THE GEO GROUP, INC. d/b/a LEA COUNTY
CORRECTIONAL FACILITY, a corporation;
SCOTT MARQUARDT, individually and in his
capacity as Chief Executive Officer of
Management & Training Corporation;
DANIEL MARQUARDT, individually and
in his capacity as President of Management & Training
Corporation; MANAGEMENT & TRAINING
CORPORATION d/b/a OTERO COUNTY
PRISON FACILITY, a corporation; JOHN
AND JANE DOES 1-20, individually and in
their official capacities; and ENTITIES 1-10,

    Defendants.

**MEMORANDUM ORDER**

    THIS MATTER is before the Court on Defendants' Motion to Dismiss the First Amended

Complaint for lack of personal jurisdiction, filed August 18, 2025. Doc. 93 ("Mot. to Dismiss").

Plaintiff filed its response on September 2, 2025.  Doc. 99 ("Pl.'s Resp.").  Defendants filed their reply on September 16, 2025.  Doc. 101 ("Defs.' Reply").  The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons below, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff Human Rights Defense Center ("HRDC") is a foreign not-for-profit organization that publishes and distributes various books, magazines, and other materials about prisons and the rights of incarcerated persons.  Doc. 76 ("Am. Compl.") ¶ 8.

The New Mexico Corrections Department ("NMCD") oversees a system of ten adult facilities.  Of these ten facilities, NMCD operates eight itself.  *Id*. ¶ 10.  The remaining two facilities are run by private companies, including Management & Training Corporation ("MTC").  *Id*.  MTC does not contract directly with NMCD; it contracts with Otero County and is obligated under that contract to follow NMCD's policies and procedures.  *Id*.; Mot. to Dismiss, Ex. A ¶ 11; Ex. B ¶ 11.

NMCD has adopted statewide policies and procedures governing inmate correspondence and mail.  Am. Compl. ¶¶ 32–34.  Its mail policy regulates inmate mail, packages, and publications.  *Id*.  Plaintiff HRDC asserts that the mail policy is "overly broad and/or too vague for a sender to understand" what it prohibits or permits.  *Id*. ¶ 36.  HRDC further alleges that, between February 2022 and July 2025, it identified at least 442 instances in which its mail to incarcerated persons was rejected, and it maintains that NMCD's mail policy amounts to unconstitutional censorship of speech in violation of the First and Fourteenth Amendments.  *Id*. ¶¶ 42, 49, 66.  HRDC therefore brings this action against various defendants, including the

governor of New Mexico, certain NMCD employees, certain employees of The GEO Group, Inc., and certain MTC employees. *Id*. ¶¶ 9–22.

Scott Marquardt and Daniel Marquardt ("MTC Officers") are among the individual defendants named in this action, and they filed the present motion. *Id*. ¶ 17. They are the chief executive officer and president of MTC, the private company that operates the Otero County Prison Facility ("OCPF"), one of the ten facilities within NMCD's system. *Id*. ¶¶ 17–19. HRDC contends that the MTC Officers are responsible for the policies, practices and customs that govern OCPF's operation, including those concerning incoming mail for incarcerated persons. *Id*. ¶¶ 17–18.

The MTC Officers move to dismiss HRDC's complaint for lack of personal jurisdiction, asserting that New Mexico lacks both general and specific jurisdiction over them and that they should not be required to litigate in the state. Mot. to Dismiss at 1.

HRDC counters that this Court may exercise personal jurisdiction because the MTC Officers allegedly direct MTC's activities toward New Mexico. Pl.'s Resp. at 2. HRDC further claims that the MTC Officers have maintained MTC's contract to run a for-profit prison in New Mexico and required MTC employees to follow statewide prison mail policies that HRDC believes are unconstitutional. *Id*.

## LEGAL STANDARD

Plaintiffs bear the burden of establishing personal jurisdiction. *See XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020). "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). When a district court rules on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the plaintiff need only

make a prima facie showing of personal jurisdiction to defeat the motion." *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022); Fed. R. Civ. P. 12(b)(2).

In other words, the plaintiff may defeat a motion to dismiss by presenting evidence—either uncontested allegations in its complaint or evidence in the form of an affidavit or declaration—"that if true would support jurisdiction over the defendant." *Eighteen Seventy*, 32 F.4th at 964–65; *XMission*, 955 F.3d at 839.

To determine whether the plaintiff has met this standard, the court applies a two-part test. The party seeking to establish personal jurisdiction over a foreign litigant must show: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment. *Eighteen Seventy*, 32 F.4th at 965; *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011).

In applying the second part of this test, a court may exercise specific personal jurisdiction over a non-resident defendant only when that defendant has the requisite "minimum contacts" with the forum state, such that having to defend the lawsuit there would not "offend 'traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Eighteen Seventy*, 32 F.4th at 965.

## DISCUSSION

**I.   The MTC Officers' Contacts with New Mexico Do Not Confer Specific Personal Jurisdiction.**

Pursuant to Fed. R. Civ. P. 4(k)(1)(A), the Court's jurisdictional reach is tied to the forum state's personal jurisdiction statute, which in this case is coextensive with constitutional limits.[1]

---

[1] New Mexico's long-arm statute provides for personal jurisdiction over "[a]ny person, whether or not a citizen or resident of this state, who . . . submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from . . . the transaction of any business within this state." N.M. Stat. Ann. § 38-1-16(A)(1) (1971); *Fireman's Fund Ins. Co. v. Thyssen Min. Constr.*, 703 F.3d 488, 493 (10th Cir. 2012).

4

*See Tercero v. Roman Catholic Diocese of Albuquerque*, 48 P.3d 50, 54 (N.M. 2002).  Because New Mexico's long-arm statute extends to the full reach of due process, the jurisdictional inquiry collapses into the constitutional analysis.  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006).

Exercising specific personal jurisdiction over a nonresident defendant comports with due process "so long as there exist minimum contacts between the defendant and the forum State." *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  Those minimum contacts exist when, first, "the defendant has 'purposefully directed' its activities toward the forum jurisdiction and, second, the plaintiff's claims arise out of those forum-directed activities.  *In re Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *Trujillo*, 465 F.3d at 1217–18.

    a. <u>Purposeful Direction</u>

The Court concludes that HRDC has not shown that the MTC Officers purposefully directed their activities toward New Mexico.

When a defendant timely challenges personal jurisdiction, the plaintiff bears the burden of establishing that the Court may exercise personal jurisdiction over the defendant and that doing so would not violate due process.  *Walker v. THI of New Mexico at Hobbs Ctr.*, 801 F. Supp. 2d 1128, 1139 (D.N.M. 2011); *see Overton v. United States*, 925 F.2d 1282, 1283 (10th Cir. 1991).  At this stage, the Court does not resolve disputed facts.  *Id*.  Rather, the Court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." *Id*.

Applying this standard, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat defendant's motion. *Eighteen Seventy*, 32 F.4th at 965. Plaintiff may make such a showing "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings Inc*, 149 F.3d at 1091; *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). The complaint's well-pled factual content "must be accepted as true if uncontroverted by the defendant's affidavits," and "factual disputes . . . must be resolved in the plaintiff's favor when the parties present conflicting affidavits." *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). However, Plaintiff must "support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989); *Romero v. TitleMax of New Mexico, Inc.*, No. CV 17-775 KG/SCY, 2020 WL 4547294, at *2 (D.N.M. Aug. 6, 2020).

Because HRDC does not allege that the MTC Officers are subject to general jurisdiction, the Court address only specific personal jurisdiction. Pl.'s Resp. at 4. HRDC argues that minimum contacts exist because the MTC Officers are "policymakers" for MTC with respect to the operation of the OCPF, which houses many New Mexico residents. *Id*. at 5. HRDC also states that MTC's contract requires all OCPF staff to apply NMCD's allegedly unconstitutional mail policies. *Id*. at 6. HRDC points to the MTC Officers' affidavits, which acknowledge that the officers are aware that MTC provides management services at the facility and that MTC is contractually bound to apply NMCD policies and procedures. *Id*. (citing Mot. to Dismiss, Ex. A ¶ 10; Ex. B ¶ 10). Regarding the MTC Officers' position that they did not personally draft NMCD's statewide policies or handle the mailings, HRDC replies that the MTC Officers do not deny approving these policies and directing MTC staff to carry them out. *Id*.

6

The MTC Officers contend that their only connection to New Mexico is their employment with a corporation that contracts with a New Mexico county to provide services at a correctional facility. Mot. to Dismiss at 7. They explain that MTC contracts with Otero County rather than NMCD, and that the contract in turn requires MTC to apply NMCD procedures at the county facility. *Id*., Ex. A ¶ 10; Ex. B ¶ 10. They further state that they played no role in drafting, creating, or implementing the mail policies at issue. *Id*. at 7. They also represent that they never communicated, directly or indirectly, with OCPF personnel about screening or handling mail pursuant to NMCD policies, and that they did not participate in processing any of the 157 items that were allegedly rejected by OCPF. *Id*., Ex. A ¶ 14; Ex. B ¶ 14; Am. Compl. ¶ 42.

HRDC responds with a different view of the officers' role. Its arguments can be distilled as follows. First, by labeling the MTC Officers as "policymakers" in the complaint and response, HRDC implies that the officers were responsible for creating the allegedly unconstitutional policies. Am. Compl. ¶¶ 17–18; Pl.'s Resp. at 9. Confronted with the MTC Officer's affidavits denying involvement, HRDC offers no supplemental materials or counter-affidavits showing, or even alleging, that the MTC Officers had any personal contacts with New Mexico. Instead, HRDC alleges only that the MTC Officers "do not dispute that they have ratified and enforced those policies," which the officers do dispute, and that "[n]or do they dispute that they have the power to stop the censorship and required their OCPF staff to provide process . . . or to resolve conflicts between OCPF staff's obligations under NMCD's policies and federal law." Pl.'s Resp. at 6. These assertions are negative inferences rather than affirmative jurisdictional facts, and such implications do not satisfy HRDC's prima facie burden.

The other core argument HRDC advances is that the MTC Officers maintain contracts with a New Mexico county to operate a for-profit prison. Pl.'s Resp. at 2, 5, 12. But both the Supreme

7

Court and the Tenth Circuit have made clear that "a contract with an out-of-state party cannot alone justify personal jurisdiction in the foreign state." *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1358 (10th Cir. 1990) (citing *Burger King Corp.*, 471 U.S. at 474); *see also Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020). When evaluating purposeful direction in a case that involves a contract, courts consider prior negotiations, contemplated future consequences, the contract's terms, and whether parties reach beyond one state to create continuing relationships and obligations with citizens of another state. *Equifax Servs.*, 905 F.2d at 1357–58 (quoting *World-Wide Volkswagen Corp*, 444 U.S. at 297).

HRDC does not allege that the MTC Officers reached into New Mexico, negotiated the contract with Otero County, or undertook any continuing obligations tied to the state. The MTC Officers and MTC do not directly contract with NMCD, the entity HRDC claims created the unconstitutional mail policies. Mot. to Dismiss, Ex. A ¶ 11; Ex. B ¶ 11; Pl.'s Resp. at 2, 6, 12, 14. The relationship described in the pleadings places the MTC Officers at one level removed from New Mexico: they work for MTC; MTC contracts with Otero County; and OCPF follows NMCD's statewide mail policies and procedures. Pl.'s Resp. at 2. Even assuming the officers maintain MTC's contract, the pleadings as a whole do not indicate that they formed any personal connection with New Mexico for jurisdictional purposes.

Accordingly, even accepting HRDC's allegations as true, that the MTC Officers maintain contracts with Otero County and are aware that MTC is obligated to apply NMCD's policies and procedures, those allegations do not establish that the MTC Officers purposefully availed themselves to New Mexico. HRDC has not identified conduct by the officers that would permit the Court to find personal jurisdiction over them.

8

Finally, HRDC suggests that the MTC Officers are in a position of authority to stop enforcing the allegedly unconstitutional policy. *Id*. at 6. That claim does not advance HRDC's jurisdictional argument because it again relies solely on the contract between MTC and Otero County, under which MTC is bound to follow NMCD's mail policies. *Id*. at 2, 8. Without alleging or demonstrating that the officers themselves took any actions that connected them to New Mexico, HRDC cannot establish minimum contacts. The Court therefore does not reach HRDC's argument that the officers were required to preemptively terminate the contract before the mail policy is found unconstitutional. *Id*. at 4.

None of the alternative purposeful availment frameworks support a finding of jurisdiction on the pleadings here. The market exploitation framework, which looks to high sales volume or extensive advertising targeting the forum, and the stream of commerce framework, which addresses a product that reaches the forum through distribution, are not at issue here. *Old Republic Ins. Co.*, 877 F.3d at 905, 909. The "harmful effects" framework, which requires conduct deliberately directed at the forum or intended to cause harm there, is likewise impertinent since HRDC alleges no such deliberate conduct directed at New Mexico by the MTC Officers. *Id*.; see also *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

Absent additional affidavits or allegations supporting the MTC Officers' purposeful direction, HRDC's assertions in the complaint and its response, even accepted as true, are insufficient to establish specific personal jurisdiction over the MTC Officers. The Court therefore concludes that HRDC has not met its burden to establish a prima facie showing of personal jurisdiction over the MTC Officers.

  b. <u>No-Imputed Contacts Rule</u>

Neither party addresses the no-imputed contacts rule, which the Tenth Circuit has recognized as part of the due process analysis for personal jurisdiction. *Newsome v. Gallacher*, 722 F.3d 1257, 1275 (10th Cir. 2013) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Under that rule, the employees' "contacts with [the forum state] are not to be judged according to their employer's activities there." *Id.* Consistent with this rule, the Court does not rely on MTC's contacts with New Mexico in resolving this motion and instead evaluates the officers' contacts separately from MTC's.

## II. Fair Play and Substantial Justice Analysis Is Unnecessary Absent Minimum Contacts.

When a plaintiff satisfies its minimum contacts burden, the burden shifts to the defendant to demonstrate that exercising personal jurisdiction would nonetheless "offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1080. "Such cases are rare." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009). The defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477; *Newsome*, 722 F.3d at 1264.

Both parties present arguments on the factors governing fair play and substantial justice. *See* Mot. to Dismiss at 8–11; Pl.'s Resp. at 9–12. Because the Court concludes that the minimum contacts requirement has not been met, the Court does not analyze those factors.

## III. Jurisdictional Discovery Is Not Warranted.

Plaintiff argues in the alternative that, if the current record is insufficient to establish personal jurisdiction, the Court should allow jurisdictional discovery. Pl.'s Resp. at 13. District courts have broad discretion over discovery, including whether to grant discovery requests with respect to jurisdictional issues. *Dental Dynamics*, 946 F.3d at 1233. "A district court abuses its

discretion in denying a jurisdictional discovery request where the denial prejudices the party seeking discovery." *Id*. "Prejudice exists where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Id.*

Notably, it is not an abuse of discretion to deny "jurisdictional discovery where there is a very low probability that the lack of discovery [will affect] the outcome of this case." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012). "The burden of demonstrating a legal entitlement to jurisdictional discovery—and the related prejudice flowing from the discovery's denial—is on the party seeking discovery." *Id.*; *Nat'l Fair Hous. All. v. Brookdale Santa Fe*, 621 F. Supp. 3d 1271, 1283–84 (D.N.M. 2022).

To obtain jurisdictional discovery, a plaintiff must make a colorable or prima facie showing of personal jurisdiction. *GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, 700 F. App'x 865, 872 (10th Cir. 2017). HRDC invokes this standard but does not satisfy it. It asserts that discovery may show the MTC Officers' involvement in forming and implementing MTC's contracts for the operation of OCPF, or that the officers, as "policymakers," exercised authority over the enforcement of NMCD's mail policies. Pl.'s Resp. at 13–14. These assertions do not satisfy Plaintiff's burden. The relevant jurisdictional inquiry asks "whether the defendants' conduct connects [them] to the forum in a meaningful way[,]" not whether the defendants exercise authority within MTC or oversee enforcement of the contract with Otero County. *Walden v. Fiore*, 571 U.S. 277, 278 (2014). As explained earlier, the existence of a contract with a New Mexico county does not by itself establish personal jurisdiction. *Equifax Servs., Inc.*, 905 F.2d at 1358 (citing *Burger King Corp.*, 471 U.S. at 474); *see also Dental Dynamics*, 946 F.3d at 1230.

HRDC does not allege that the MTC Officers themselves created, directed, or exploited contacts with New Mexico. Absent such allegations, Plaintiff has not laid foundation for jurisdictional discovery. *GCIU-Emp. Ret. Fund*, 700 F. App'x at 872. Its theory rests on the existence of MTC's contract with Otero County and on suppositions about the officers' internal authority, none of which tie the officers' own conduct to New Mexico.

Moreover, the MTC Officers correctly observe that MTC is already a party to this case, and HRDC does not explain why discovery directed at the officers is necessary or efficient when HRDC sues them only in their official capacities. Plaintiff identifies no way in which jurisdictional discovery aimed at the officers would add anything to the information available through MTC itself. Mot. to Dismiss at 9. Because MTC's jurisdiction is not disputed, and because Plaintiff has not shown how discovery from the officers would bear on the personal-jurisdiction analysis, the Court does not see how denying jurisdictional discovery will affect the resolution of this case.

HRDC, however, correctly notes that cases dismissing official-capacity claims as redundant typically involve municipalities rather than private employers. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Doe v. Farmington Mun. Sch.*, Civ. No. 21-103 SCY/KK, 2022 WL 9956170, at *1 (D.N.M. Oct. 17, 2022); *Buck v. City of Albuquerque*, Civ. No. 04-1000 JP/DJS, 2006 WL 8443817, at *2 (D.N.M. Aug. 8, 2006). But even if the Court were to allow jurisdictional discovery, and even assuming that HRDC could uncover evidence that the MTC Officers participated in forming or implementing MTC's contracts with OCPF, the outcome would not be significantly different. The Court has already made clear that the bare existence of a contract with a New Mexico entity does not confer personal jurisdiction over nonresident officers. *Equifax*, 905 F.2d at 1358.

12

Aside from its conclusory assertion that the MTC Officers are key decisionmakers by virtue of their positions, HRDC has not alleged or suggested that the officers themselves interacted with New Mexico in any way beyond the contract's existence.  *See* Pl.'s Resp. at 5.

At this stage, the record does not indicate that jurisdictional discovery would alter the Court's analysis.  Because plaintiff has not made a prima facie showing of personal jurisdiction and has not demonstrated prejudice from the denial of discovery, jurisdictional discovery is not warranted.

## CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Dismiss for lack of personal jurisdiction is **GRANTED** as described above.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**